COLUMBIA/HCA HEALTHCARE CORPORATION, A DELAWARE CORPORATION; SUNRISE HOSPITAL, A NEVADA CORPORATION D/B/A SUNRISE HOSPITAL AND MEDICAL CENTER AND SUNRISE CHILDREN'S HOSPITAL; HUMANA, INC., A DELAWARE CORPORATION D/B/A HUMANA HOSPITAL–SUNRISE AND SUNRISE CHILDREN'S HOSPITAL; GALEN HEALTH CARE, INC., LESLIE SOPER, M.D.; BURNETT, DiFRANCESCO, EVANS, FRIES IIZUKA, KEAMY, KEMP, KOZMARY, RUSSELL, SMITH, SOPER, WALSH, LTD., LESLIE E. SOPER, M.D., CHTD.; JOHN B. PAYNE, D.O., ALBERT H. CAPANNA, M.D.; ALBERT H. CAPANNA, M.D., A NEVADA PROFESSIONAL CORPORATION; CAPANNA & ASSOCIATES, A NEVADA PROFESSIONAL CORPORATION; CAPANNA'S INTERNATIONAL NEUROSCIENCE CONSULTANTS, INC., A NEVADA PROFESSIONAL CORPORATION; PEDIATRIC AND ADOLESCENT NEUROLOGY & DIAGNOSTIC ASSOCIATION, INC., A NEVADA PROFESSIONAL CORPORATION, PETITIONERS, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE GERARD J. BONGIOVANNI, DISTRICT JUDGE, RESPONDENTS, AND KEVIN AND ELIZABETH DAILEY, INDIVIDUALLY, KEVIN AND ELIZABETH DAILEY, AS SPECIAL ADMINISTRATORS AND PERSONAL REPRESENTATIVE OF THE ESTATE OF ERIK S. DAILEY, A DECEASED INFANT, REAL PARTIES IN INTEREST.

No. 28491

April 24, 1997                                  936 P.2d 844

*Earley & Dickinson*, Las Vegas, for Petitioners Columbia/ HCA, Galen Health Care, Inc. and Sunrise Hospital.

*Alverson, Taylor, Mortensen, Nelson & Sanders*, Las Vegas, for Petitioner Soper.

*Pico & Mitchell*, Las Vegas, for Petitioner Payne.

*Beckley, Singleton, Jemison & List, Chtd.*, and *Daniel F. Polsenberg*, Las Vegas, for Petitioner Capanna.

*Thorndal, Backus, Armstrong & Balkenbush; Pearson & Patton*, Las Vegas, for Real Parties in Interest.

# OPINION

*Per Curiam:*

On December 20, 1991, Erik S. Dailey (hereinafter "Erik") was five and one-half months old when he was diagnosed with an arachnoid cyst in the posterior fossa region of his brain.[1] Over the following three years and ten months, Erik endured thirteen surgeries before finally expiring on October 4, 1995. During Erik's hospitalization, the parents of Erik, Kevin and Elizabeth Dailey (collectively "Daileys") made their displeasure with Erik's treatment and care known to petitioners Columbia/HCA Healthcare Corporation, et al. (collectively "Sunrise Hospital"). As a result, on February 5, 1992, Ms. Kerry L. Earley, counsel for Sunrise Hospital, sent a missive to Ms. Lucille Compton, director of patient relations and risk management at Sunrise Hospital, stating:

> This letter is to inform you that you are hereby directed to conduct any investigation of the [Erik] matter at my direction for defense of this case on behalf of Humana, Inc. Our office has been retained to investigate this matter for purposes of defense of this claim on behalf of Humana, Inc.

On March 29, 1995, the Daileys filed a complaint against Sunrise Hospital. The first supplemental complaint followed on February 22, 1996. Both complaints alleged, in essence, that Erik's misdiagnosis led to negligently performed surgical procedures, ultimately resulting in Erik's premature demise.

However, prior to filing their first complaint, the Daileys sought evidence from Sunrise Hospital pursuant to NRCP 27.[2] The subpoena duces tecum requested, in part, disclosure of "[a]ny incident report arising out of the treatment of Erik S. Dailey in the period of January-May, 1992."[3] A subsequent subpoena issued during the medical screening panel process also

---

[1] An arachnoid cyst is a membrane-lined fluid filled sac, located between the lower brain and spinal cord region of the cranium. Stedman's Medical Dictionary 353 (5th ed. 1982).

[2] Before a person initiates formal proceedings, NRCP 27 allows prospective plaintiffs to perpetuate testimony regarding "any matter that may be cognizable in any court of the State."

[3] Incident or occurrence reports "are completed by Sunrise Hospital personnel when unusual circumstances occur regarding a patient's medical care and treatment. These documents are reviewed by the hospital's Quality Assurance Department for the purposes of reviewing and improving the quality of care given at Sunrise Hospital."

required Sunrise Hospital to provide "[t]ranscriptions of oral statements about or written statements about any Hospital employee or from any physician with staff privileges at Hospital involved in the care of Erik S. Dailey." Counsel for Sunrise Hospital denied the existence of such statements and failed to provide any documents pursuant to these requests. It was not until actual deposition testimony was elicited from Sunrise Hospital employees that the existence of occurrence reports was revealed.[4]

Consequently, Sunrise Hospital submitted, for an in camera inspection by the discovery commissioner, nine documents identified as occurrence reports. On December 28, 1995, the discovery commissioner concluded that the documents should be handed over to the Daileys.

Sunrise Hospital contested this ruling on the ground that the occurrence reports were prepared in anticipation of litigation pursuant to attorney Earley's February 5, 1992 letter. Thus, according to Sunrise Hospital, the reports fell under the work product doctrine embodied in NRCP 26(b)(3) and enunciated in Ballard v. District Court, 106 Nev. 83, 787 P.2d 406 (1990). However, the discovery commissioner found this contention unpersuasive. Specifically, his report and recommendation stated, "I would note that the single general letter of February 5, 1992 . . . is insufficient to invoke the [work product doctrine] . . . and is only a thinly veiled attempt to get around the production of initial factual investigation . . . ."

Sunrise Hospital also averred that the occurrence reports were protected under the peer review privilege in NRS 49.265. This argument was similarly found to be without merit. The discovery commissioner declared that the information in the occurrence reports was merely "raw data collected from percipient witnesses and perhaps rounded out by supervisory or even risk management personnel. It is true this information may later be submitted to a peer review committee, but this act does not turn the factual non-privileged information into privileged information." On April 3, 1996, the district court adopted, in its entirety, the report and recommendation of the discovery commissioner.

Sunrise Hospital petitions this court for alternative writs of prohibition or mandamus challenging the district court's decision to allow the Daileys access to the occurrence reports. However,

---

[4]Candace Jensen, a registered nurse supervisor during Erik's hospitalization, had the following exchange at her deposition:

Q.  Would you fill out an occurrence report if someone was injured pursuant to their care or treatment in the operating room?
A.  Yes, you would fill out an occurrence report.
Q.  Was an occurrence report filled out on Erik Dailey?
A.  Occurrence report was filled out on Erik Dailey.

before this court may decide the merits of Sunrise Hospital's petition, it must first address the threshold inquiry of whether the extraordinary relief of prohibition or mandamus is available to challenge a district court order permitting pretrial discovery.

In pertinent part, NRS 34.320 provides that a "writ of prohibition . . . arrests the proceedings of any tribunal . . . exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal." Conversely, a writ of mandamus issues to "compel the performance of an act which the law especially enjoins as a duty." NRS 34.160. A "writ may be issued only by the supreme court to an inferior tribunal . . . where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.330. The decision to entertain a writ is within the sound discretion of this court. Bowler v. District Court, 68 Nev. 445, 234 P.2d 593 (1951).

Sunrise Hospital argues that if a writ of prohibition is not granted to prevent disclosure of the occurrence reports, "the applicable privileges will be waived." In support of its request for granting a writ, Sunrise Hospital cites Wardleigh v. District Court, 111 Nev. 345, 891 P.2d 1180 (1995). In *Wardleigh,* a writ of prohibition issued to prevent pretrial discovery of a law firm's client files. In overruling the district court's order compelling discovery, this court stated, "If improper discovery were allowed, the assertedly privileged information would irretrievably lose its confidential and privileged quality and petitioners would have no effective remedy, even by a later appeal." *Id.* at 350-51, 891 P.2d at 1183-84. Accordingly, this court ruled that the district court exceeded its jurisdiction by ordering blanket discovery of the client files. *Id.*

Although not cited in Sunrise Hospital's petition, Schlatter v. District Court, 93 Nev. 189, 561 P.2d 1341 (1977), appears to be factually on point with the instant matter. *Schlatter* was a personal injury action in which the district court compelled disclosure of plaintiff's medical records. *Id.* This court held that the lower court exceeded its jurisdiction by ordering "carte blanche discovery of all information contained" in the medical records. *Id.* at 192, 561 P.2d at 1343-44. The *Schlatter* court concluded that a grant of mandamus vacating the trial court's earlier discovery order was appropriate. The court stated that the plaintiff "would effectively be deprived of any remedy from the [district court's] erroneous ruling if she was required to disclose the information and then contest the validity of the order on direct appeal." *Id.* at 193, 561 P.2d at 1344.

*Wardleigh* and *Schlatter* are analogous to the instant matter. If

Sunrise Hospital's occurrence reports do indeed contain privileged information and discovery is compelled through the lower court's order, then "the bell cannot be unrung," not even on direct appeal. Accordingly, under this court's most recent rulings, a writ of prohibition is an appropriate remedy to prevent pretrial discovery of privileged material.

In response, the Daileys cite no countervailing authority. Instead, the Daileys rely upon an Ohio Supreme Court case, State ex rel. Children's Medical Ctr. v. Brown, 571 N.E.2d 724 (Ohio 1991). The Daileys urge this court to adopt the *Brown* standard in granting a writ of prohibition. However, a reading of *Brown* reveals that it is wholly consistent with this court's practice.

Accordingly, we conclude that a writ of prohibition or mandamus may be an appropriate remedy when addressing a pretrial discovery order, which leaves a litigant with no plain, speedy or adequate remedy at law.

### Work product doctrine

NRCP 26 (b)(3), reads in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared *in anticipation of litigation* . . . only upon a showing that the party seeking discovery has *substantial need* of the materials in the preparation of his case and that he is unable without *undue hardship* to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Emphasis added.)

Sunrise Hospital claims that since the occurrence reports were "created as part of an investigation directed by an attorney," they qualify as documents prepared in anticipation of litigation and should be protected.

In contrast, the Daileys aver that the occurrence reports were not created in anticipation of litigation. Rather, they were prepared in the ordinary course of business. Additionally, the Daileys assert that substantial need exists for discovery of the occurrence reports because the information cannot be obtained in any other manner.

Sunrise Hospital's claim that the occurrence reports were prepared in anticipation of litigation is based squarely on language in Ballard v. District Court, 106 Nev. 83, 787 P.2d 406 (1990). In

*Ballard,* while discussing the breadth of the work product doctrine, this court concluded that "materials resulting from an insurance company's investigation are not made 'in anticipation of litigation' unless the insurer's investigation has been performed at the request of an attorney." *Id.* at 85, 787 P.2d at 407 (citing Langdon v. Champion, 752 P.2d 999 (Alaska 1988)). Sunrise Hospital analogizes the insurance summaries in *Ballard* to the occurrence reports in the instant matter for the wholesale proposition that whenever documents "are created as part of an investigation directed by an attorney [they] are afforded a qualified privilege because they are created in anticipation of litigation." We conclude that Sunrise Hospital's claim is untenable.

The facts in the instant matter are distinguishable from those in *Ballard.* The occurrence reports were prepared in the ordinary course of business. Sunrise Hospital's petition implicitly admits this fact by requiring personnel to fill out pre-printed forms in the event of an unexpected occurrence. "Occurrence reports consist of a four page *form,* which is completed by a hospital employee who has information regarding an unusual event that occurred at the hospital." (Emphasis added.) Sunrise Hospital further admits that the purpose, at least in part, for creating occurrence reports is to improve "the quality of care given at Sunrise Hospital."

To suggest, as Sunrise Hospital does, that documents become privileged by injecting an attorney into the investigative process is a specious argument, especially when the investigation occurs in the ordinary course of business. The discovery master, who inspected the documents, recognized this point in his report and recommendation:

> I would note that the single general letter of February 5, 1992, sent to the Risk Management Director at Sunrise from attorney, Kerry Earley, which directs Risk Management to "conduct an investigation of the above-captioned matter at my direction for defense of this case . . ." is insufficient to invoke the [work product doctrine] in my view and is only a thinly veiled attempt to get around the production of initial factual investigation, as mandated by *Ballard* and NRCP 16.1.

Furthermore, the Daileys maintain that Sunrise Hospital's interpretation of *Ballard* cannot be reconciled with this court's decision in *Wardleigh.* In *Wardleigh,* attorneys for the homeowners association attended several board meetings. *Wardleigh,* 111 Nev. at 349, 891 P.2d at 1182. When the minutes of the board meeting were subpoenaed, the petitioners attempted to avail themselves of the work product doctrine. *Id.* at 357, 891 P.2d at

1188. This court rejected petitioners' claim that the minutes were prepared in anticipation of litigation under NRCP 26(b)(3) by declaring that "[t]he mere presence of the attorneys at these meetings does not make the minutes privileged and therefore protected by the work product doctrine." *Id.* at 357-58, 891 P.2d at 1188.

Here, Earley's letter directing an investigation is no different from the presence of counsel at board meetings. Both the board minutes and occurrence reports would have been created in the ordinary course of business regardless of counsel's presence or involvement. Accordingly, we conclude that the occurrence reports were not created in anticipation of litigation for purposes of protection under NRCP 26(b)(3).[5]

*Peer review privilege*

Nevada's peer review statute, NRS 49.265 provides, in pertinent part:

> 1. Except as otherwise provided in subsection 2:
> (a) *The proceedings and records of*:
> (1) Organized committees of hospitals . . . having the responsibility of evaluation and improvement of the quality of care rendered by those hospitals or organizations; and
> (2) Review committees of medical or dental societies, are not subject to discovery proceedings. . . .

(Emphasis added.)

Although Sunrise Hospital claims that the occurrence reports are protected by the peer review privilege, circuitously it wants an opinion upholding the constitutionality and expansive discovery privileges of NRS 49.265. However, the parties did not raise a constitutional question in their respective petitions and, under the particular facts of this matter, that question is never reached.[6] Rather, the narrow issue currently before this court is one of statutory interpretation: whether occurrence reports were intended to be included in the phrase of NRS 49.265 "proceedings and records of" and, therefore, exempted from discovery.

---

[5]This conclusion comports with Professor Wright's theory of when documents are created in anticipation of litigation: "[E]ven though litigation is already in prospect, *there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.*" 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024, at 343-46 (1994) (footnotes omitted) (emphasis added).

[6]*See, e.g.*, Miller v. Ashurst, 86 Nev. 241, 244, 468 P.2d 357, 359 (1970) (stating that the court will not undertake to resolve constitutional questions involved in a statute until those issues are presented in a proper case).

While several courts have generally discussed the privileged status of occurrence reports, the North Dakota Supreme Court addressed the precise issue before this court. In Trinity Medical Ctr. v. Holum, 544 N.W.2d 148, 157 (N.D. 1996), the court stated:

> We construe the phrase "proceedings and records of" the committee to be limited to the formal proceedings before the committee, and the internal records generated by the committee. Specifically, this would include testimony given to the committee at the hearing, the deliberations and discussions among committee members, and the minutes of committee meetings. It does not include other information or data provided to the committee or collected for the committee's review by hospital departments or employees. *It is the internal functioning of the committee which is protected.*

(Emphasis added.)

The Texas appellate court similarly held that the peer review privilege extends only to documents prepared by or at the direction of the committee. Conversely, those which are gratuitously submitted or generated without committee impetus are not protected. McAllen Methodist Hosp. v. Ramirez, 855 S.W.2d 195, 198 (Tex. Ct. App. 1993). The court further noted that the privilege does not apply to "routine accumulative information despite the fact that these documents may eventually serve as evidence in committee deliberations." *Id.* (citing Barnes v. Whittington, 175 S.W.2d 493, 496 (Tex. 1988)).

Courts offer compelling reasons for permitting discovery of occurrence reports. The Supreme Court of Arizona expressed concern that hospitals would funnel damaging factual information through review committees to shield it from potential plaintiffs. Lipschultz v. Superior Court, 623 P.2d 805, 808 (Ariz. 1981). The Illinois appellate court echoed these same sentiments:

> If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the *statutory* privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in the patient's records.

May v. Wood River Township Hosp., 629 N.E.2d 170, 174 (Ill. App. Ct. 1994).

The only opinion in this court's jurisprudence discussing the reciprocal relationship of occurrence reports and NRS 49.265 is Ashokan v. State, Dep't of Ins., 109 Nev. 662, 856 P.2d 244

(1993). *Ashokan* began its analysis of the peer review statute by noting that "[p]rivileges should be construed narrowly." *Id.* at 668, 856 P.2d at 247 (citing United States v. Nixon, 418 U.S. 683, 710 (1974)). In particular, we found NRS 49.265 to be "extremely limited" in scope. *Id.* at 668, 856 P.2d at 248. This court reasoned that in the past the legislature has demonstrated its ability to draft broad privileges (attorney-client, doctor-patient, accountant-client, therapist-client, and social-worker-client). However, the fact that NRS 49.265 was categorized as "Other Occupational Privileges" demonstrates the legislature's effort to tailor the peer review immunity to specific parameters. Put another way, "the legislature obviously understood that it was creating a privilege with a much narrower scope than that of other privileges." *Id.* at 669, 856 P.2d at 249.

The legislative history of NRS 49.265 also demonstrates that the intent of the legislature was to protect only the internal operations of peer review. On March 20, 1969, before the Judiciary Committee, Dr. Salvadorini testified in support of enacting the modern day version of NRS 49.265:

> In our practice we have all kinds of committees that we use to see that the work in the hospitals is going properly. In these committee meetings we discuss in depth all the things going on in the hospital. These are now supenable [sic] and can be used in a court of law. We ask that *these committees* be given some type of immunity so that we can proceed in detail without fear that these proceedings will be made public.

Proposed Evidence Code for the State of Nevada: Hearings Before the Assembly Committee on Judiciary, 55th Sess. 179 (1969) (emphasis added).

Senator Harry M. Reid and Assemblyman Schouweiler, less than two weeks later, on April 1, 1969, stated:

> Mr. Reid:  This is a good bill. As the doctors told us, in most hospitals they set up a lot of committees to review what is going on in the hospital . . . . They have all kinds of these committees. The reason for setting these up is so that people will receive better treatment. . . . This is there [sic] way of policing their own activities in the hospital. If they suddenly have their files open to the public, the doctors would be unwilling to step on the toes of their fellow doctors at the hospital.
>
> Mr. Schouweiler:  These records should not be available for evidentiary proceedings. . . . *This is limited to one area, the hospital review records.*

Proposed Evidence Code for the State of Nevada: Hearings Before the Assembly Committee on Judiciary, 55th Sess. 260 (1969) (emphasis added).

The committee minutes make clear that the legislature intended to protect only documents *derived* directly from the peer review process. Nowhere do the legislators discuss their intent to protect *antecedent* reports memorializing bare facts which were collected from percipient witnesses. Accordingly, we conclude that the legislature never intended to exempt occurrence reports from discovery under NRS 49.265.

Sunrise Hospital's counter-arguments are based on cases which are distinguishable from the instant matter.[7] However, Sunrise Hospital offers Cruger v. Love, 599 So. 2d 111 (Fla. 1992), for the proposition that courts should not limit peer review privileges only to materials generated by review committees because it discourages reporting negative information. In short, this proposition is illusory.

Occurrence reports, which Sunrise Hospital admits are nothing more than factual narratives, contain the very type of information that will most likely be uncovered through traditional discovery procedures anyway. In those rare instances where the information can only be obtained through the occurrence report, prospective plaintiffs should not be denied access. Allowing NRS 49.265 to become an impenetrable bulwark of damaging factual information defeats the very purposes of Nevada's evidence code for which NRS 49.265 is a part: "The purposes of this [evidence code is] to secure fairness in administration . . . to the end that truth may be ascertained and proceedings justly determined." NRS 47.030.

Therefore, we conclude that the occurrence reports are neither work product nor protected by the peer review privilege embodied in NRS 49.265. Accordingly, Sunrise Hospital's petition for a writ of prohibition or, in the alternative, mandamus is denied.[8]

---

[7]Alexander v. Superior Court, 859 P.2d 96 (Cal. 1993), is inapplicable because it dealt with protecting the applications of hospital physicians and not incident reports. Yuma v. Regional Medical Ctr., 852 P.2d 1256 (Ariz. 1993), addressed the immunity given documents considered or witnesses heard *at an actual peer review hearing*. West Covina Hosp. v. Superior Court, 718 P.2d 119 (Cal. 1986), is irrelevant since it dealt with the court's refusal to compel a sitting review committee member to testify about a peer review meeting in open court.

[8]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.