772 So.2d 447 (2000)
Ex parte DOSTER CONSTRUCTION COMPANY, INC.
(In re Curtis O. Childress v. Doster Construction Company, Inc.)
1990203.
Supreme Court of Alabama.
May 19, 2000.
*448 David M. Wilson and Jonathan L. Berryhill of Janecky Newell, P.C., Birmingham, for petitioner.
Stewart G. Springer of Campbell & Springer, Birmingham, for respondent.
Clifford W. Cleveland and Kelly Tipton Lee of Cleveland & Colley, P.C., Prattville, for amicus curiae Alabama Trial Lawyers Ass'n in support of the respondent.
HOUSTON, Justice.
Doster Construction Company, Inc. ("Doster"), the defendant in an action currently pending in the Jefferson Circuit Court, petitions for a writ of mandamus directing the trial court to grant its motion *449 to compel the deposition of the plaintiff, Curtis O. Childress. We grant the petition in part and issue the writ.
Childress filed the action below to collect workers' compensation benefits from Doster, his employer, for an injury he claimed to have received during the course of his employment. Doster contends in the trial court that it is not liable for any medical or compensatory benefits because, it says, the disabling injuries Childress alleges were not the natural and probable consequence of the original compensable injury. In preparing its case for trial, Doster notified Childress that it wished to take his deposition at the offices of Doster's attorneys. Childress refused to sit for the deposition; he claimed that he was entitled to know if a surveillance videotape of him existed and, if it did, that he was entitled to review it before sitting for the deposition. Doster moved to compel Childress to sit for the deposition; Doster argued that it was entitled to have its motion granted without disclosing whether a videotape existed or, if one did exist, without disclosing the tape itself. The trial court denied that motion. Doster petitioned the Court of Civil Appeals for a writ of mandamus compelling the trial court to grant its motion. The Court of Civil Appeals denied the petition, and Doster filed a similar petition with this Court.
The issue is whether the trial court abused its discretion in ruling that Childress does not have to appear for deposition until Doster both discloses whether a videotape of Childress exists and, if it does, permits Childress to view the videotape.
We recognize, initially, that no evidence before us indicates that a surveillance videotape exists. However, we also note that the vast majority of Doster's argument in support of its motion to compel the deposition was directed against the proposition that Childress was entitled to view a videotape before he was deposed and that Childress refused to be deposed until he was told whether a videotape existed and, if it did, then until he had viewed the tape. With the case in this posture, and because the trial court failed to specify in a written order why it denied the motion to compel, the only logical conclusion we can draw is that the trial court based its order on Doster's refusal to disclose both whether such a videotape exists and, if one does, its refusal to disclose the videotape itself.
We first address the question whether a surveillance videotape of an employee/plaintiff held by the employer/defendant is discoverable in a workers' compensation case.
The discoverability of evidence in Alabama is governed by Rule 26, Ala. R. Civ. P. That rule states that parties are entitled to discovery regarding any matter that is relevant to the subject matter of the case, as long as it is not privileged. Rule 26(b)(1). Doster argues that a videotape would be protected under the attorney-work-product privilege. In Alabama, the work-product privilege protects against being required to reveal an attorney's mental impressions, conclusions, opinions, and legal theories. See Rule 26(b)(3); Ex parte Water Works & Sewer Bd. of the City of Birmingham, 723 So.2d 41 (Ala.1998); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). A videotape showing the employee would clearly not fall within this aspect of the privilege. However, Rule 26(b)(3) extends the work-product privilege to materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative, including the other party's attorney, consultant, surety, indemnitor, insurer, or agent, unless the party seeking disclosure can show a substantial need for the materials or can show he would incur an undue hardship in obtaining the substantial equivalent of the materials by other means. If it is determined that the employer prepared a surveillance videotape in anticipation of litigation or for trial, then the question becomes whether the employee has a substantial need for the videotape and cannot, without *450 undue hardship, obtain the information he seeks from some other source.
Other states have recognized a concern that the production of a surveillance videotape before the employee/plaintiff is deposed would greatly impair the truth-finding function of cross-examination. DiMichel v. South Buffalo Ry., 80 N.Y.2d 184, 197, 590 N.Y.S.2d 1, 604 N.E.2d 63, 68 (1992). "[A surveillance] videotape picturing the plaintiff engaged in physical activity has the potential to reveal inconsistencies between the plaintiff's claimed injuries and resulting limitations and the plaintiffs actual abilities." Wolford v. JoEllen Smith Psychiatric Hosp., 693 So.2d 1164, 1167 (La.1997). The New York Court of Appeals has stated, "We believe that [the danger posed by an employee's ability to tailor his testimony to explain activities depicted in a videotape] can be largely eliminated by providing that surveillance films should be turned over only after a plaintiff has been deposed." DiMichel, 80 N.Y.2d at 197, 590 N.Y.S.2d 1, 604 N.E.2d at 68. Likewise, the Louisiana Supreme Court held:
"[A] surveillance videotape has potential value as a unique impeachment tool, distinct from other forms of evidence, that would be irrevocably lost if the defendant were required to turn it over before fully deposing the plaintiff about his activities and injuries."
Wolford, 693 So.2d at 1167.
Alabama workers' compensation law is a creature of the Legislature, and the Legislature provided the courts with a statement of policy[1] in its 1992 amendments to the Alabama Workers' Compensation Act:
"It is ... the intent of the Legislature in adopting this workers' compensation scheme to address difficulties in the current scheme that are producing a debilitating and adverse effect on the state's ability to retain existing industry and attract new industry. The Legislature finds that the [previous workers' compensation act] and other means of compensation or remedy for injury in the workplace [have] unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. ...
". . . .
"It is the finding and expressed intent of the Legislature that the existence of a fair and affordable workers' compensation system within the State of Alabama materially contributes to the economic growth and prosperity of the state and all its citizens."
Act No. 92-537, § 1, Ala. Acts 1992. (Emphasis added.) The Legislature, therefore, intended with the enactment of this legislation to provide employees and employers with a fair and affordable workers' compensation procedure.
The primary way to keep the costs of workers' compensation affordable is to reduce the number of fraudulent claims filed by employees. By allowing the employer to protect a surveillance videotape, the trial court will be helping to promote truthful answers by an employee at his deposition. See DiMichel and Wolford, supra; Hikel v. Abousy, 41 F.R.D. 152 (D.Md.1966); Dodson v. Persell, 390 So.2d 704 (Fla. 1980). Alternatively,
"If the plaintiff were to view the surveillance videotape prior to being deposed as to his physical injuries and limitations during the time period pictured in the videotape, he would be more likely, either inadvertently or deliberately, to tailor his testimony to correspond with the actions pictured in the videotape."
Wolford, 693 So.2d at 1167.
Truth is the common thread used to achieve the twin goals set by the Legislaturethat the Alabama workers' compensation scheme be fair and that it be affordable. Furthermore, truth is the *451 cornerstone of our judicial system, and courts always strive to find it. In Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), the Supreme Court of the United States noted:
"Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth which is the sine qua non of a fair trial. Over the centuries Anglo-American courts have devised careful safeguards by rule and otherwise to protect and facilitate the performance of this high function."
Later, in Briscoe v. LaHue, 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Court, discussing Justice White's concurring opinion in Imbler v. Pachtman, 424 U.S. 409, 439, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), acknowledged that "[i]t is precisely the function of a judicial proceeding to determine where the truth lies." Courts have developed procedures to separate truth from falsitythe oath, the perjury penalty, public proceedings, the sequestration of witnesses, and prior notice to an opponent of the evidence a party intends to use. See Ex parte Frazier, 562 So.2d 560, 566-67 (Ala.1989).
We see no apparent advantage to requiring the disclosure of a videotape before an employee is deposed, except for the advantage that would inure to the employee if he intended to lie or to pursue a fraudulent claim. Therefore, the quest for the truth should be furthered through protecting the videotape before the employee is deposed. Of course, the employee also has a right to question the truthfulness of the images on the videotape. Therefore, once a party decides to use the videotape as evidence, it is no longer protected by the work-product privilege. Dodson, 390 So.2d at 707. At that point, the employee is entitled to test the truth and validity of the images on the videotape. Because videotapes are particularly vulnerable to manipulation through various editing techniques, the videotape, if requested, should be produced by the employer within a reasonable time before trial so as to afford the employee the opportunity to test its validity and authenticity.
We next address the issue whether an employer/defendant that holds a surveillance videotape must acknowledge that fact before the employee is deposed. The fact that such a videotape exists would be discoverable. Rule 26(b)(3) extends the work-product privilege to "documents and tangible things otherwise discoverable under subdivision (b)(1)." The fact of the existence of a videotape is not a "document" or "tangible thing," within the meaning of the Rule. Therefore, under Rule 26(b)(1), the fact of the existence of a videotape is discoverable "[u]nless otherwise limited by order of the court in accordance with [the Rules of Civil Procedure]." Under Rule 26(d) the trial court has the discretion to manage the sequence in which the various discovery methods may be used. Therefore, the trial court may decide not to require the employer to disclose whether a videotape exists, if in the trial court's judgment nondisclosure would promote truthfulness by the employee in his deposition or in his responses to other discovery requests.
The trial court denied Doster's motion to compel Childress to sit for a deposition. In doing so, it held that Childress did not have to testify until he knew whether Doster had a videotape and, if it did, until he had had a chance to view the videotape. The trial court acted within its discretion in ordering Doster to disclose whether it has a surveillance videotape of Childress. However, in light of our discussion above, we conclude that the trial court abused its discretion in holding that Doster, if it had a videotape, had to produce that videotape before Childress could be compelled to testify by deposition. Assuming the existence of a surveillance videotape and assuming that the videotape was prepared in anticipation of litigation or for trial, such a holding must be predicated on a showing of substantial need and undue *452 hardship as set out in Rule 26(b)(3).[2] Before being deposed, an employee would ordinarily have difficulty showing that he was ignorant of what activities on his part could have been observed; therefore, an employee would have difficulty demonstrating that he had a substantial need to see a videotape and would have difficulty showing that he could not obtain the substantial equivalent of such information without undue hardship. In any event, Childress made no attempt to satisfy the requirements of Rule 26(b)(3). Under these circumstances, Doster has shown a clear right to an order directing Childress to appear for deposition without Doster's first having disclosed to him the surveillance videotape, if it has such a tape. Ex parte Price, 698 So.2d 112 (Ala.1997).
PETITION GRANTED IN PART; WRIT ISSUED.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., concur.
COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., dissent.
COOK, Justice (dissenting).
The majority issues a writ of mandamus in this workers' compensation case directing the trial judge to vacate an order denying a discovery motion of the defendant Doster Construction Company ("Doster"). Specifically, Doster moved to compel the plaintiff Curtis Childress to submit to a deposition in Childress's action against Doster seeking workers' compensation benefits. I respectfully dissent.
The facts relevant to this petitionas far as they are revealedare simple, but most peculiar. Childress seeks workers' compensation benefits. Doster, his employer, denies that he is entitled to them and wants to depose him. Childress wants to know whether Doster has any video recordings of him that were made "subsequent to the accident made the basis of this lawsuit." Doster refuses to disclose whether such recordings exist. Childress refuses to be deposed by Doster until Doster discloses whether it has video recordings and produces them if it does. The trial court has denied a motion by Doster to compel Childress to appear for deposition without first being told whether the defendant has videotapes and, if it does have videotapes, without seeing them.
The relief sought by Doster is remarkable. Specifically, it "requests this Court to issue a Writ of Mandamus ordering the trial court to mandate [the workers' compensation plaintiff's] attendance at his deposition without [Doster's] having to disclose the existence of video or surveillance or any other recording medium and without have to produce that material, should it exist." Petition for Writ of Mandamus, at 18 (emphasis added).
It is well established that Alabama trial courts have "broad discretion to control the discovery process and to prevent its abuse by either party." Ex parte Water Works & Sewer Bd. of the City of Birmingham, 723 So.2d 41, 44 (Ala.1998). Moreover, the writ of mandamus will issue only to correct an abuse of discretion. Three Coast Carriers, Inc. v. Ford Motor Credit Co., 607 So.2d 169 (Ala.1992).
In seeking a writ of mandamus, the petitioner is in an untenable position. This is so, because it bases its argument for mandamus relief on the ground of attorney work product. Indeed, it cites a number of cases for the proposition that video recordings produced under certain circumstances may constitute attorney work product. Concomitantly, however, it refuses to concede that a video recording exists. Axiomatically, because it refuses to concede the existence of a recording, it presents no facts demonstrating the existence of any privilege. Because it presents no facts, all the caselaw on which it *453 relies for support is irrelevant. Thus, Doster refuses to admit that a video recording exists, but, nevertheless, asserts that, if it did exist, it would be attorney work product and the cases it cites would be on point.
In an attempt to address the incontrovertible position presented by these facts, the majority states:
"The trial court denied Doster's motion to compel Childress to sit for a deposition. In doing so, it held that Childress did not have to testify until he knew whether Doster had a videotape and, if it did, until he had had a chance to view the videotape. The trial court acted within its discretion in ordering Doster to disclose whether it has a surveillance videotape of Childress. However, in light of our discussion above, we conclude that the trial court abused its discretion in holding that Doster, if it had a videotape, had to produce that videotape before Childress could be compelled to testify by deposition."
772 So.2d at 451. This characterization of the trial court's action is not supportable. The trial court's order states in toto: "The Defendant Doster Construction Company, Inc.'s Motion to Compel Deposition is hereby OVERRULED." Petition for Writ of Mandamus, at Tab 11. Thus, I cannot say, as the majority does, that the trial court held "that Doster, if it had a videotape, had to produce that videotape before Childress could be compelled to testify by deposition."
The untenability of this position is succinctly expressed by the respondent Childress. For example, he states: (1) The trial judge was never "provided any information whatsoever that videotaped surveillance of Curtis Childress existed," Brief of Respondent, at 7; (2) "How can [the trial judge] presume or assume `if' videotaped surveillance exists ... that such supposed videotaped surveillance was prepared in anticipation of litigation or is work product privileged?" Id. at 8; and (3) "This simply assumes privilege with no facts." Id. at 11.
This Court cannot reverse an order of the trial court for an abuse of discretion when the facts are not before us. In this case, however, the majority does exactly that. It holds that the trial court abused its discretion, even though the defendant refuses to concede the existence of facts that would demonstrate such an abuse. I would not interfere with the trial court's handling of discovery matters under these circumstances. Therefore, I respectfully dissent.
LYONS, Justice (dissenting).
Doster's responses to Childress's efforts to discover the videotapes consist of objections that clearly admit the existence of one or more surveillance videotapes. The trial court's order merely denies a motion seeking only to withhold disclosure of the existence of the tapes until after the deposition. The trial court did not abuse its discretion in denying Doster's motion to take a deposition without first disclosing a circumstance that Doster had already acknowledged to exist.
Childress has not moved to compel production of any videotapes or to compel answers to his interrogatories seeking information about surveillance videotapes. Because Doster is under no present duty to produce such material, it is premature to consider the timing of any production related to Childress's deposition.
If the matter were before us on Childress's motion to quash the notice of his deposition or, in the alternative, for a protective order postponing the deposition until any videotapes are produced, or if it were here on Doster's motion for an order compelling the deposition before further proceedings on the discoverability of any videotapes, the matter would be in an entirely different procedural posture. Because this matter is not here in one of those postures, I must dissent from the order granting the petition for the writ.
*454 JOHNSTONE, Justice (dissenting).
The petition for writ of mandamus is procedurally groundless. The petitioner seeks a writ of mandamus enforcing the petitioner's claim of an attorney work product privilege on a surveillance videotape. The petitioner, however, refused to disclose to the trial judge or opposing counsel whether or not any such videotape exists. Rather, the petitioner contended before the trial court and contends before this Court that the petitioner should not be required to disclose whether or not the videotape exists. A party claiming a privilege must initially make a prima facie showing that the privilege exists. Rule 26(b)(3), Ala. R. Civ. P., and Ex parte Garrick, 642 So.2d 951 (Ala.1994). See also Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655 (S.D.Ind.1991).
The petitioner's refusal to disclose whether or not the surveillance videotape exists logically and necessarily forecloses any contention by the petitioner that it prepared a surveillance videotape in anticipation of litigation. A writ of mandamus will not issue unless the petition seeking it establishes, among other essential elements, that the petitioner has a "clear legal right" to the relief sought. Ex parte McNaughton, 728 So.2d 592 (Ala.1998). Because the petitioner has not made even a prima facie showing that it prepared a surveillance videotape in anticipation of litigation, and therefore that a privilege protects such surveillance videotape from disclosure, the petition does not establish a clear legal right in the petitioner to the relief sought. This Court cannot simply assume a prima facie showing of the privilege and thus assume a clear legal right in the petitioner to a writ of mandamus enforcing such a privilege.
ENGLAND, Justice (dissenting).
The majority opinion holds that the trial court abused its discretion in holding that Doster had to produce a videotape before Childress could be compelled to testify by deposition. I respectfully dissent.
The majority opinion concludes that Childress failed to make a showing of substantial need and undue hardship as set out in Rule 26(b)(3), Ala. R. Civ. P. That rule provides that a party may obtain discovery of certain documents and tangible things only after showing a substantial need for the materials and an inability to obtain the substantial equivalent without undue hardship. This showing, however, is not required when the party is attempting to obtain "a statement concerning the action or its subject matter previously made by that party." Rule 26(b)(3). Rule 26(b)(3) includes "stenographic, mechanical, electrical, or other recording[s]" in its definition of "statement" as that term is used in subdivision (b). Thus, under Rule 26(b)(3), Childress would not need to make a showing of substantial need and undue hardship to examine any statements by Childress captured by the audio portion of the videotape; but under the discovery rule which the majority now creates, Childress could not examine the video portion.
Doster has the burden of showing that the trial court abused its discretion. I cannot say that the trial court abused its discretion, because it appears to me that Rule 26(b)(3) would allow Childress to obtain a copy of the videotape without regard to whether he was about to be deposed. It was within the trial judge's discretion to order that the videotape be produced to the plaintiff before the plaintiff was deposed because the details of the discovery process are left to the discretion of the trial court. See Van Buren v. Dendy, 440 So.2d 1012 (Ala.1983).
The majority would treat an injured worker differently from the way any other class of litigants is treated. Only an injured worker would be required to submit to a deposition without first having an opportunity to view that which will in all likelihood be discussed during the deposition, i.e., the activities of the injured worker that were videotaped by the employer. The Alabama Rules of Civil Procedure *455 permit very broad discovery, but Rule 26(c), recognizing that discovery is not unlimited, "accordingly vests the trial court with broad discretionary power to control the use of the [discovery] process," and "[a]s a result, [a] writ [of mandamus] will not issue unless the right sought to be enforced is clear and certain, with no reasonable basis for controversy about the right to relief." Ex parte Mack, 461 So.2d 799 (Ala.1984); see also Ex parte Dorsey Trailers, Inc., 397 So.2d 98 (Ala.1981); Ex parte Knox Kershaw, Inc., 562 So.2d 250 (Ala.1990); Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala.1976); Ex parte Georgia Casualty & Surety Co., 531 So.2d 838, 841 (Ala.1988); and Plitt v. Griggs, 585 So.2d 1317 (Ala.1991). "It is well settled that discovery rules should be liberally construed in order to provide the parties with information relevant to the litigation." Ex parte Knox Kershaw, Inc., 562 So.2d at 253. The majority's opinion implies that an injured worker could rarely demonstrate a substantial need to see a videotape before being deposed because, the majority says, "an employee would ordinarily have difficulty showing that he was ignorant of what activities on his part could have been observed." 772 So.2d at 452. In addition, the majority's holding would require the trial court to force the injured worker to submit to deposition without the employer's showing any particularized justification for not allowing the injured worker to see the videotape before his deposition. There may be circumstances where a showing could be made that would justify the trial court's compelling an injured worker to appear for deposition without first viewing the videotape, such as the employer's having information from medical records or healthcare providers indicating that the injured worker has a history of overstating his injuries or faking injury, or testimony or statements from employees or supervisors that bring the injured worker's credibility into question. In any event, the determination of whether an employee should be allowed to review a surveillance videotape before being deposed should be left to the sound discretion of the trial court.
We must keep in mind that "`the rules for discovery are designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments be rested upon the real merits of cases and not upon the skill and maneuvering of counsel.'" Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 104 (Ala.1981) (quoting 23 Am.Jur.2d, Depositions and Discovery, § 155 (1965)). The majority departs from these rules for discovery.
NOTES
[1] "[T]he Legislature prescribes the State's policy; the courts do not.... [The courts'] province is only to give it effect as made." Almon v. Morgan County, 245 Ala. 241, 245, 16 So.2d 511, 514 (1944).
[2] Discovery documents in the record indicate that one of Doster's attorneys and a representative of Doster indicated to the trial court that any videotape in Doster's possession would have been prepared in anticipation of litigation or for trial.