138 Nev., Advance Opinion 8

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

KEOLIS TRANSIT SERVICES, LLC,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
RICHARD SCOTTI, DISTRICT JUDGE,
Respondents,
and
SHAY TOTH,
Real Party in Interest.

No. 81637-COA



FILED

FEB 24 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition challenging a district court order compelling disclosure of an insurer's surveillance videos and related reports in a tort action.

*Petition granted in part and denied in part.*

Muehlbauer Law Office, Ltd., and Andrew R. Muehlbauer and Sean P. Connell, Las Vegas,
for Petitioner.

Cliff W. Marcek, P.C., and Cliff W. Marcek, Las Vegas; Moss Berg Injury Lawyers and Boyd B. Moss, Las Vegas,
for Real Party in Interest.

Claggett & Sykes Law Firm and Micah S. Echols, Las Vegas; Sharp Law Center and A.J. Sharp, Las Vegas,
for Amicus Curiae Nevada Justice Association.

22-06013

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., TAO and BULLA, JJ.

*OPINION*

By the Court, TAO, J.:

This interlocutory writ petition arises from a personal injury action in which the petitioner asserts that the district court improperly ordered that three surveillance videos and two related reports created by its insurance company's investigators were subject to discovery and not protected from disclosure as "work product" under NRCP 26(b)(3). Based on the record, we can only reach a decision as to the first two videos and the report related to those videos. We conclude that the first two videos and related report are not protected work product because their production was not directed by Keolis's counsel. We cannot, however, reach a conclusion as to the ultimate discoverability of the third video and accompanying report because, while they were created at the direction of Keolis's counsel after the suit was commenced and thus constitute work product, the district court did not analyze whether they may nonetheless be discoverable upon a showing of substantial need and undue hardship. Because the district court ordered the disclosure of all the videos and reports at issue without conducting the required analysis, we take this opportunity to clarify the appropriate framework as it pertains to an insurer's surveillance materials. Accordingly, we grant the petition in part and direct further proceedings.

*FACTUAL BACKGROUND*

While driving a vehicle on behalf of petitioner Keolis Transit Services, LLC (Keolis), employee Andre Petway rear-ended a vehicle driven by real party in interest Shay Toth, allegedly causing serious injuries to Toth, who subsequently retained counsel. A few days after the collision, in

July 2017, Toth's counsel sent a letter notifying Keolis's third-party insurer of Toth's representation and that she was claiming damages for personal injuries in connection with the collision.

Days after receiving this letter, the insurer obtained an Insurance Services Office (ISO) report to ascertain whether Toth had filed other insurance claims. A little over a year later, in August 2018, the insurer initiated an investigation to assess Toth's injuries and the truthfulness of her claims. As part of this investigation, an investigator recorded video surveillance of Toth publicly engaged in daily activities. Outside of representations Keolis's counsel made to the discovery commissioner below that a claims adjuster directed this surveillance, the record does not reveal who participated in the decision to conduct this additional investigation or what specifically prompted it. The investigator generated two surveillance videos of Toth, both dated August 2018 in Keolis's privilege log. The investigator also produced a written report associated with these two videos, likewise dated August 2018.

In June 2019, Toth filed the instant suit for negligence against both Petway and Keolis. Thereafter, Keolis's counsel directed further investigation, culminating in a third surveillance video of Toth engaged in public activities and an accompanying written report.[1] During discovery, in response to requests for production of documents, Keolis disclosed the existence of these videos and reports without disclosing their contents. Toth then specifically requested copies of, or access to, the videos and reports, but

---

[1]Because this matter reached this court in connection with an interlocutory writ petition, neither Toth nor this court has seen the contents of any of the three surveillance videos or the two accompanying reports, nor does it appear that the district court reviewed any of these materials.

Keolis refused, asserting that the surveillance videos and reports are protected work product.

Toth filed a motion to compel pursuant to NRCP 16.1(a)(1)(A)(ii), arguing that Keolis was required to disclose the videos and reports with its initial disclosures. The discovery commissioner determined that the ISO report should be disclosed, as it was prepared in the ordinary course of business. However, the discovery commissioner concluded that the videos and related reports are protected from discovery as work product, but that Keolis would need to disclose the materials within 30 days of Toth's deposition if Keolis intended to use them at trial.

After Toth filed an objection, the district court partly modified the discovery commissioner's report and recommendation and, in a one-sentence footnote containing no analysis or findings, ordered Keolis to immediately produce all three videos and both related reports. Keolis filed this petition seeking a writ of prohibition challenging the district court's discovery order with respect to the surveillance materials, but not the ISO report.

*ANALYSIS*

*Standard for writ relief*

"Generally, extraordinary relief is unavailable to review discovery orders." *Diaz v. Eighth Judicial Dist. Court*, 116 Nev. 88, 93, 993 P.2d 50, 54 (2000). A court may nevertheless consider a writ petition raising a discovery issue if "an important issue of law needs clarification and public policy is served by the court's invocation of its original jurisdiction." *Id.* (quoting *Bus. Comput. Rentals v. State Treasurer*, 114 Nev. 63, 67, 953 P.2d 13, 15 (1998)). A writ of prohibition is appropriate to prevent improper discovery. *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev. 369,

373-74, 399 P.3d 334, 341 (2017); *Venetian Casino Resort, LLC v. Eighth Judicial Dist. Court*, 136 Nev. 221, 223 n.3, 467 P.3d 1, 4 n.3 (Ct. App. 2020).

Here, we elect to entertain the petition to clarify the legal analysis a district court must apply when determining whether an insurer's surveillance materials are protected as work product and, if surveillance videos qualify for work-product protection, whether they are nevertheless subject to discovery, which is an important issue that may arise in numerous similarly situated cases. Moreover, without our intervention, the district court's order compelling disclosure of the videos and related reports may result in the unjust compromise of potentially protected work product that an appeal could not fully rectify after a final judgment. Accordingly, we deem our intervention appropriate.

*Standard of review*

This court will not disturb the district court's ruling on discovery matters absent a clear abuse of discretion. *Canarelli v. Eighth Judicial Dist. Court*, 136 Nev. 247, 251, 464 P.3d 114, 119 (2020). To receive this deference, however, "the district court must apply the correct legal standard in reaching its decision, and we owe no deference to legal error." *See In re Guardianship of B.A.A.R.*, 136 Nev. 494, 496, 474 P.3d 838, 841 (Ct. App. 2020).

*Surveillance videos and the work-product doctrine*

The work-product doctrine originated at common law but currently stands codified in NRCP 26(b)(3), which states the following:

> (A) **Documents and Tangible Things.** Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

> (i) they are otherwise discoverable under Rule 26(b)(1); and

> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Thus, the preliminary inquiry when considering a work-product question is whether the material was created in anticipation of litigation or for trial.

As the Nevada Supreme Court explained in *Wynn Resorts, Ltd. v. Eighth Judicial District Court*, a party prepares a document in anticipation of litigation when, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 133 Nev. at 384, 399 P.3d at 348 (quoting Restatement (Third) of the Law Governing Lawyers § 87 cmt. i (Am. Law Inst. 2000)). This test, commonly referred to as the "because of" test, asks whether a party prepared or obtained a document because of the prospect of litigation and whether the anticipation of litigation was essential for the creation of the document.[2] *Id.* "The anticipation of litigation must be the *sine qua non* for the creation of the document—'but for the prospect of that litigation,' the document would

---

[2]We take this opportunity to note that the narrow issue here is Toth's ability to access the contents of the videos and reports. The mere existence of videos and reports like those at issue here generally must be disclosed in discovery. *See* NRCP 16.1(a)(1)(A)(ii) (providing that a party must disclose "a description by category and location" of materials that it "may use to support its claims or defenses, including for impeachment or rebuttal"); NRCP 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case . . . ."); *Ex parte Doster Constr. Co.*, 772 So. 2d 447, 451 (Ala. 2000); *Cabral v. Arruda*, 556 A.2d 47, 50 (R.I. 1989).

not exist." *Id.* (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004)). Thus, the "because of" test does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)). In general, to determine whether a document satisfies the "because of" test, the district court must consider the totality of the circumstances. *Id.*

Here, the third video and related report were created at the express direction of Keolis's counsel *after* Toth filed suit. However, the first two videos and related report were created earlier by the insurance carrier, before Toth's suit was filed, for reasons not fully clear from the record. Under the general work-product analysis, the question would be whether Keolis, through its insurer, created these materials in the ordinary course of business, in which case they are not protected under the work-product doctrine, or rather created the videos "because of" looming litigation, in which case they are protected work product. This case, however, is not governed by the typical work-product analysis.

As the parties note, the complexity in this case lies in the fact that insurance companies exist, in at least some sense, for the purpose of recommending and implementing policies and procedures to mitigate the possibility of conduct that may lead to future litigation that necessarily requires them to anticipate, plan for, avoid, and defend actual or threatened litigation. Indeed, insurance carriers charge their clients premiums based upon actuarial calculations that expressly consider the likelihood of future litigation and the potential damages that a jury might award. But this cuts two ways. On the one hand, Keolis argues that, because much of what insurance carriers do is anticipate and respond to possible litigation threats,

every investigation they conduct in response to the receipt of a lawyer's letter of representation must be considered protected work product. On the other hand, Toth argues that, because insurance carriers are in the business of routinely conducting such investigations whenever they receive a letter of representation from an attorney, whether they ever lead to lawsuits or not, such investigations are merely part of their regular and ordinary business activities.[3]

The Nevada Supreme Court has addressed this issue. In *Ballard v. Eighth Judicial District Court*, the supreme court articulated a special rule for insurers' investigations: investigative materials generated in the context of an insurance investigation are considered to have been created in the ordinary course of business of the insurance company, rather than in anticipation of litigation, unless the investigation was performed at the request or under the direction of an attorney. *See* 106 Nev. 83, 85, 787 P.2d 406, 407 (1990). In *Ballard*, within days of an automobile/pedestrian accident but after learning that the plaintiff was represented by counsel, the defendant's automobile liability insurance company began its own investigation into the facts and circumstances of the accident. *Id.* at 84, 787 P.2d at 407. When the plaintiff later sought to discover a statement that

---

[3]Toth argues that NRS 686A.310 mandates insurance investigations and therefore makes an insurance investigation an ordinary business activity. *See Wynn Resorts*, 133 Nev. at 384, 399 P.3d at 348 (noting that the "because of" rule "withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998))). That statute, however, only describes the failure to investigate a claim as an "unfair practice" and therefore cannot be read to categorically make video surveillance an ordinary business activity such that surveillance videos are automatically excluded from work-product protection.

the defendant made to the insurer during that investigation, the supreme court held that "materials resulting from an insurance company's investigation are not made 'in anticipation of litigation' unless the insurer's investigation has been performed at the request of an attorney." *Id.* at 85, 787 P.2d at 407 (citing *Langdon v. Champion*, 752 P.2d 999 (Alaska 1988)). Therefore, the court concluded, because the statement "was not taken at the request of an attorney, it is not privileged under NRCP 26(b)(3)." *Id.*

After *Ballard*, the supreme court clarified this rule in *Columbia/HCA Healthcare Corp. v. Eighth Judicial District Court*, holding that the simple involvement of an attorney does not automatically insulate all materials, such as a hospital's occurrence reports, from discovery as work product. 113 Nev. 521, 526-27, 936 P.2d 844, 848 (1997) (discussing *Ballard* and rejecting the notion "that documents become [protected work product] by injecting an attorney into the investigative process . . . , especially when the investigation occurs in the ordinary course of business"). While *Columbia* is not an insurance investigation case, we read it and *Ballard* together to require, at least, an attorney's involvement before insurance investigation materials become work product, but also to acknowledge that an attorney's involvement is not itself sufficient to confer work-product protection to materials that otherwise would have been prepared in the ordinary course of business, irrespective of the attorney's involvement.

*Ballard* controls the initial inquiry of this discovery dispute regarding materials created through an insurer's investigation. With respect to the first two videos, *Ballard*'s requirement of attorney involvement proves dispositive. This illustrates the special outcome under *Ballard* as opposed to the general analysis under *Wynn Resorts*, as the record suggests that the first two videos were created in response to the

letter of representation from Toth's counsel. Specifically, although not prompted by Keolis's counsel, a colorable argument can still be made that these videos were created "because of" litigation, rather than in the ordinary course of business, because the attorney letter itself might have triggered the expectation of potential future litigation. Under *Ballard*'s insurer exception, however, any such subjective anticipation of litigation, no matter how real it may have been, is immaterial so long as the insurer's attorney did not direct the surveillance.

This outcome may seem counterintuitive under the general "because of" test. However, when viewed in light of the uniquity of insurance company practices explained above, the reason for this initial and potentially dispositive inquiry becomes clear. Accordingly, we take this opportunity to clarify that the "because of" test generally applied in work-product cases gives way to *Ballard*'s counsel requirement when insurance investigation materials are at issue. Yet, while involvement of counsel is necessary, it is not sufficient. *Columbia*, 113 Nev. at 526-27, 936 P.2d at 848. Instead, we read *Ballard* and *Columbia* together to establish that insurance investigation materials are created in anticipation of litigation, and are therefore protected work product, only when they are created at the direction of counsel under circumstances demonstrating that counsel's involvement was reasonable and not for the mere strategic purpose of obtaining work-product protection for routinely created materials.

Thus, we conclude that Nevada Supreme Court precedent resolves this case with respect to the first two videos and the accompanying report because Keolis did not argue for, and the record does not support, a conclusion that the initial investigation came at the direction of Keolis's counsel. Thus, the first two videos and report should be produced. We turn

next to the third video and accompanying report, drawing two crucial distinctions.

The most obvious distinction between the materials, given the preceding discussion, is that the final video and report were created at the direction of Keolis's counsel. However, the other distinction is perhaps more important. The third video was created *after* Toth filed her lawsuit. This is important because work-product protections attach to materials prepared both "in anticipation of litigation or *for trial*." NRCP 26(b)(3)(A) (emphasis added).

While the third video and related report were generated at the direction of counsel, we need not wrestle with the question of whether counsel's involvement was reasonable or merely strategic because, when the third video was made, litigation had already commenced. There was nothing left to anticipate. The third video and related report were created after Toth filed suit; therefore, the materials were prepared for trial. Accordingly, the third video and its related report are protected by the work-product doctrine under NRCP 26(b).

Nonetheless, we must stop short of reaching a conclusion as to the ultimate discoverability of the third video and related report. Keolis argues that the district court failed to perform the complete and necessary analysis, and its argument is correct, as far as it goes; the district court's order consists of only a single sentence and virtually no analysis of any facts. Because that single sentence ordered the materials disclosed, it had no reason to analyze the main exception to the work-product doctrine. However, our foregoing analysis shows that such an analysis must be performed. When materials meet the requirements for protection under the work-product doctrine, they may still be subject to discovery upon a showing by the requesting party of substantial need and undue hardship under

COURT OF APPEALS
OF
NEVADA

(O) 1947B

11

NRCP 26(b)(3)(A). Thus, if the record demonstrates that this exception is met, then the third video and related report are discoverable regardless of whether the work-product doctrine applies to them.

Our supreme court has defined the terms "substantial need" and "undue hardship" for purposes of this exception. *See generally Canarelli v. Eighth Judicial Dist. Court*, 136 Nev. 247, 257-58, 464 P.3d 114, 122-23 (2020). In particular, the party seeking to overcome work-product protection must demonstrate an actual need for the evidence in the preparation of its case; "[a] mere assertion of the need will not suffice."[4] *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 358, 891 P.2d 1180, 1188 (1995). The requesting party must also demonstrate that he or she would face undue hardship to discover the same evidence "or the substantial equivalent thereof." *Id.* Generally, no undue hardship exists if the same evidence is discoverable by any other reasonable means. *See id.* at 359, 891 P.2d at 1188-89 (finding no undue hardship where the requesting party could have deposed any of 74 individuals who could possess the desired evidence). Importantly, under NRCP 26(b)(3)(B), "[i]f the court orders discovery of [work-product] materials, it must protect against disclosure of

_____

[4]We note that the extent to which Keolis plans to use the materials at trial is relevant to the question of whether Toth can show substantial need under NRCP 26(b)(3)(A). *See Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 670 (S.D. Cal. 2000) ("Whether [surveillance] films will be used at trial is a significant factor in determining whether the party seeking to discover them has a 'substantial need' for the material."). Moreover, although it is not necessary to our disposition, we note that multiple courts, like the discovery commissioner here, have determined that defendants need only produce work-product surveillance materials to be used, after they have had the opportunity to depose the plaintiff, reasoning that such timing preserves a defendant's ability to use the materials for impeachment. *See, e.g., Marchello v. Chase Manhattan Auto Fin. Corp.*, 219 F.R.D. 217, 219 (D. Conn. 2004); *Cabral*, 556 A.2d at 50.

the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

In the case at bar, the district court disposed of the discoverability of all the surveillance videos in a single-sentence footnote, ordering all the materials disclosed. As a result, the district court made no findings and provided no analysis of the exception under NRCP 26(b)(3)(A), let alone the appropriate conditions of the production to protect against the disclosure of counsel's mental impressions, conclusions, opinions, or legal theories as required under NRCP 26(b)(3)(B). Based upon the record before us, we are unable to determine whether Toth demonstrated, or could have demonstrated, substantial need and undue hardship and, if so, when the production should be made. Nor can we sit as factfinders and determine these questions in the first instance.[5] Consequently, we grant Keolis's petition in part and direct the district court to reconsider Toth's motion to compel under the standards set forth herein.

---

[5]As noted above, it appears that the content of the videos has not been disclosed to the district court. The nature of the video is important to a determination of whether the evidence or the substantial equivalent thereof is obtainable via other means. When a party alleges that surveillance videos or other similar materials contain potentially sensitive information, district courts may inspect the materials in camera in order to answer these inquiries. *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 515-16 (5th Cir. 1993) (addressing the district court's analysis of video evidence after an in camera review of the evidence); *Mitchell v. Eighth Judicial Dist. Court*, 131 Nev. 163, 176, 359 P.3d 1096, 1104 (2015) (directing the district court to conduct an in camera review of allegedly sensitive documents to determine "the conditions appropriate to their production"); *Las Vegas Sands v. Eighth Judicial Dist. Court*, 130 Nev. 643, 656, 331 P.3d 905, 914 (2014) (directing the district court to resolve disputes regarding a privilege log by conducting an in camera review to determine if the records were in fact privileged).

## CONCLUSION

For the reasons set forth herein, we conclude that the first two videos and related report, created before the suit was filed, fail *Ballard*'s explicit requirement for counsel involvement in insurance cases. As such, those materials are not protected work product. The third video and accompanying report, however, were created at the direction of counsel after Toth filed suit against Keolis. Accordingly, these materials are work product. The third video and related report may nonetheless be discoverable upon a showing of substantial need and undue hardship. Because the district court failed to apply this framework, however, we grant Keolis's petition in part and direct the clerk of this court to issue a writ of prohibition instructing the district court to vacate its order granting Toth's motion to compel insofar as it required production of the third video and related report and to conduct further proceedings consistent with this opinion.

_____, J.
Tao

We concur:

_____, C.J.
Gibbons

_____, J.
Bulla