891 P.2d 1180 (1995)
Rose WARDLEIGH and Kevin Sigstad, Petitioners,
v.
The SECOND JUDICIAL DISTRICT COURT OF the STATE OF NEVADA, in and for the COUNTY OF WASHOE, and the Honorable Mark Handelsman, District Judge, Respondents, and
Clear Acre, Ltd., a Nevada Limited Partnership, and its General Partners, Clear Acre, Inc., a Nevada Corporation, McMillan Construction Company, an Entity of Unknown Capacity, Successor in Interest to McMillan Construction Company, a Dissolved Nevada Corporation, Donald L. Wilkerson, Ronald G. Palmer and John Ghilieri; Thomas G. McMillan; McMillan Mortgage Company, an Entity of Unknown Capacity; S.E.A., Incorporated, a Corporation; Gary A. Hartunian; 5334 Lindley Partnership, a California Limited Partnership, and its General Partners, Garabed Demirjian and Albert Wayne; Clear Acre Village Apartments, Ltd., a California Limited Partnership d/b/a Clear Acre Apartments, and its General Partners, Garabed Demirjian, Gary A. Hartunian, and Albert Wayne; Novato Corporation, n.v., a Netherlands Antilles Corporation, Cornell Finance Company, Ltd., a Hong Kong Corporation; Cornell Properties, Inc., a Nevada Corporation; John Handley; Bobby D. Slentz; The City of Reno, Nevada, a Municipal Corporation; Prudential Real Estate Affiliates, Inc., a Corporation; Prudential Residential Services, L.P., a Limited Partnership; Successor in Interest to Merrill Lynch Realty, an Entity of Unknown Capacity; Jack Matthews, an Individual; Jack Matthews and Co., a Corporation; Prudential Homes Corp., a Corporation; Fine Homes, L.P., a Limited Partnership; and Kleinfelder, Inc., a California Corporation as Successor in Interest to J.H. Kleinfelder, Real Parties in Interest.
No. 25190.
Supreme Court of Nevada.
March 22, 1995
*1182 Maddox & Robertson and Jo Lee M. Wickes, Reno, for Petitioners.
Perry & Spann, Reno, for City of Reno.
Woodburn & Wedge and Casey Vlautin, Reno, for Prudential.
McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks and Matthew C. Addison, Reno, for Clear Acre, Wilkerson & Palmer.
Erickson, Thorpe & Swainston, Ltd., Reno, for John Ghilieri.
Rawlings, Olson & Cannon and Dana Jonathon Nitz, Las Vegas, for McMillan and McMillan Construction.
Beasley, Holden & Brooks, Reno, for S.E.A., Inc.
Benesch & Fermoile, Reno, for Kleinfelder, Inc.
Jack I. McAuliffe, Reno, for Cornell Properties, Inc.
Robert Grayson, Carson City, for 5334 Lindley Partnership and Albert Wayne.
Monsey & Andrews, Las Vegas, for Jack Matthews.

OPINION
PER CURIAM:
In this original proceeding in mandamus, petitioners Rose Wardleigh and Kevin Sigstad seek a writ of mandamus or prohibition directing respondent district court to vacate a pretrial discovery order permitting discovery of certain minutes and legal files, and to prevent an attorney deposition. Because real parties in interest have not shown undue hardship as required to circumvent the work product doctrine, the district court erred in ordering the discovery of certain legal files and in allowing the attorney's deposition. Therefore, writ relief is warranted.

FACTS
Petitioners own units in Wildcreek Gardens, a Reno condominium development. The property owners in Wildcreek Gardens are represented by the Wildcreek Garden Condominium Homeowners Association ("Association"), a non-profit Nevada corporation. In 1993, petitioners filed a complaint on behalf of themselves and the 312 condominium owners who belong to the Association in order to recover damages caused by the allegedly deficient manner in which the condominiums were constructed. However, only petitioners Wardleigh and Sigstad are presently named as plaintiffs.
Prior to the present action, three previous lawsuits had been filed complaining about the poor quality of the condominiums. The first action was dismissed in 1979. The second action, brought in 1985 by three homeowners, was also dismissed. The law firm of Hale, Lane, Peek, Dennison & Howard ("Hale firm") and attorney Donald Lattin represented the various plaintiffs in this second suit. At various times, attorneys from the Hale firm attended the Association's board meetings in their capacity as counsel for the 1985 lawsuit. Individual homeowners who were not board members also attended these meetings. Additionally, individuals who were neither homeowners nor attorneys attended some of these meetings ("true guests"). The Association produced and kept minutes of these meetings. The third lawsuit was initiated in 1989 by two individual *1183 homeowners alleging the same construction defects. The Hale firm represented the plaintiffs, and attorney John White filed the lawsuit. As with the previous lawsuits, this action was also dismissed.
In 1991, petitioners initiated the present lawsuit alleging, like their predecessors, construction defects in their homes. In each of petitioners' three amended complaints, they raised the issue of their lack of knowledge of construction defects as a basis for tolling the statute of limitations. Additionally, petitioners unsuccessfully sought a class certification and the addition of the Association as a named plaintiff to represent the homeowners. In 1993, petitioners' counsel, in an attempt to have the homeowners assign their claims to the Association, sent a letter to all the homeowners clearly marked "Confidential Attorney-Client Privileged Communication." In response to this second letter, 295 homeowners sent signed, written responses in the form of postcards to petitioners' counsel. These postcards contained the purported assignments.
The Real Parties in Interest ("Real Parties") subsequently petitioned the district court to compel production of the legal files, Association minutes, 1993 postcards,[1] and to compel attorney Lattin to subject himself to depositional testimony. The district court granted the discovery order sought by Real Parties, thus prompting petitioners to seek an original protective writ in this court.

DISCUSSION
Petitioners contend that they are entitled to writ relief from the district court's discovery order on grounds that the attorney-client privilege and attorney work-product doctrine preclude discovery of the legal files of the Hale firm and attorneys White and Lattin, and the written minutes from the Association meetings. Petitioners invoke the same grounds in support of their opposition to attorney Lattin's deposition.
This original proceeding requires us to determine whether the district court erred by ordering disclosure of the Association minutes and legal files, as well as ordering the deposition of Lattin. We must also determine whether the discovery ordered by the lower court is protected by the attorney-client privilege and/or the attorney work product doctrine, and if so, whether a writ of mandamus or writ of prohibition is an appropriate remedy.

Mandamus or Prohibition
In the instant proceeding, petitioner has sought alternative relief in the form of mandamus or prohibition. This court has previously issued a writ of mandamus compelling a district court to vacate a discovery order under circumstances similar to the present case. See Clark v. District Court, 101 Nev. 58, 692 P.2d 512 (1985) (writ of mandamus issued upon finding that a district court had exceeded its jurisdiction in ordering production and disclosure of privileged information); see also Schlatter v. District Court, 93 Nev. 189, 561 P.2d 1342 (1977) (writ issued upon finding that district court had exceeded its jurisdiction in ordering discovery of irrelevant matter). Moreover, a writ of mandamus may be issued "to compel performance of an act" that the law requires as a duty resulting from an office, trust or station if there exists no plain, speedy, and adequate remedy at law. NRS 34.160; NRS 34.170. Notwithstanding the foregoing precedent, in the case of State ex rel. Tidvall v. District Court, 91 Nev. 520, 524, 539 P.2d 456, 458 (1975), this court held that "[p]rohibition is the remedy which is generally employed to prevent improper discovery" (citations omitted). We reaffirm, without the necessity of overruling either Clark or Schlatter, that prohibition is a more appropriate remedy for the prevention of improper discovery than mandamus.
Writ relief is an available remedy, where, as here, petitioners have no plain, speedy and adequate remedy at law other than to petition this court. If improper discovery were allowed, the assertedly privileged information would irretrievably lose its *1184 confidential and privileged quality and petitioners would have no effective remedy, even by a later appeal. Schlatter, 93 Nev. at 193, 561 P.2d at 1344. Therefore, a writ of prohibition will issue to prevent discovery required by court order entered in excess of the court's jurisdiction. Although this court will infrequently exercise its discretion to entertain pre-trial challenges to discovery, there are occasions where, in the absence of writ relief, the resulting prejudice would not only be irreparable, but of a magnitude that could require the imposition of such drastic remedies as dismissal with prejudice or other similar sanctions.

Attorney-Client Relationship
Petitioners invoke the attorney-client privilege as a barrier to the discovery of the 1985 and 1989 legal files, Association minutes, and the taking of Lattin's deposition. Because the information at issue regards communications with the homeowners, it is necessary to determine whether the homeowners are clients, and if they are, whether the communications between the homeowners and the attorneys in question were intended to be privileged, and therefore, confidential.[2]
To the extent that the attorney-client relationship involving homeowners is alleged to exist merely because of their membership in the Association, no such relationship exists. Because the Association is a non-profit corporation, the homeowners are analogous to corporate shareholders (NRS 49.105(1)), and the Association and its members must therefore be treated like a corporation and shareholders, respectively, for purposes of evaluating the attorney-client privilege.
Not surprisingly, difficulties arise in attempting to apply the attorney-client privilege in a corporate setting. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985). Accordingly, courts have fashioned two approaches that deal with the inherent problems.
First, the "control group" test allows only those individuals who personify the corporation, through their managerial or advisory capacities and their power to respond authoritatively to a corporate lawyer's advice, to assert the privilege. See Samaritan Found. v. Superior Court, 844 P.2d 593, 601, 605 (Ariz. Ct. App. 1992) (aff'd in part, vacated in part sub nom. Samaritan Found. v. Goodfarb, 862 P.2d 870 (Ariz. 1993)); see also Consolidated Coal Co. v. Bucyrus-Erie Co., 432 N.E.2d 250, 257-58 (Ill. 1982). Clearly, corporate shareholders do not fall within the category of persons enabled to assert the privilege under the control group test; accordingly, this test is of no help to petitioners.
Second, the test adhered to by the U.S. Supreme Court focuses on the nature of the subject matter sought in discovery and requires a finding that the subject matter embodies the type of information intended to fall within the privilege. See Upjohn Co. v. United States, 449 U.S. 383, 389-97 (1981). The Court in Upjohn appropriately noted that only communications and not facts are subject to the privilege. Thus, relevant facts known by a corporate employee of any status in the corporation would be discoverable even if such facts were related to the corporate attorney as part of the employee's communication with counsel. The communication itself, however, would remain privileged. Id. at 395-96. The Supreme Court thus rejected the narrow, control group test as a source of confusion rather than assistance in the area of privileged communications involving corporate employees or agents. Id. at 392-97, 101 *1185 See also Admiral Ins. v. United States Dist. Court For Dist. of Ariz., 881 F.2d 1486, 1493 (9th Cir.1989); LSB Industries, Inc. v. C.I.R., 556 F. Supp. 40, 42 (1982).
Although we approve the test announced in Upjohn, neither the control group test nor the Upjohn test would permit the homeowners, as the equivalent of corporate shareholders, to assert, for that reason alone, the privilege under the circumstances of the instant case. It is clear, of course, that where homeowners have actually retained an attorney on their behalf, the attorney-client privilege exists and may be asserted with respect to communications with their attorneys. Again, however, in accordance with the rule in Upjohn, the homeowner clients may not withhold relevant facts within their knowledge despite having communicated such facts to their attorneys.
Petitioners, however, contend that the corporate analysis is misplaced because Nevada law does not provide standing to condominium associations in actions arising out of construction defects in the common areas. Deal v. 999 Lakeshore Association, 94 Nev. 301, 304, 579 P.2d 775, 777 (1978). Continuing, petitioners conclude that because the present action involves common areas and because, absent statutory authority, condominium associations do not have standing to sue with regard to those areas, any attorney employed to obtain redress for defects to the common areas must necessarily represent the homeowners. The argument misses the mark. The mere fact that the Association lacks standing to file an action does not translate into an attorney-client relationship with homeowners in litigation sponsored by the Association.
If the Association acts as an agent or facilitator for homeowners who have retained counsel, Association officials so acting on behalf of the Association would be drawn into the privilege enjoyed by the homeowner clients. However, such representation by the Association will be privileged only to the extent that the Association acts on behalf of the homeowner clients in a setting where it is clear that the communications with the homeowners' counsel were intended to be privileged and confidential.
If, for example, a meeting sponsored by the Association involved putative counsel and homeowners consisting of those who do and those who do not elect to be represented in a contemplated action, the meeting could not be privileged. Conversely, after specific homeowners employed counsel to pursue an action on their behalf, and the Association thereafter accommodated a meeting restricted in attendance to Association officials, represented homeowners and counsel, such a meeting would come within the protections of the attorney-client privilege.
Petitioners contend that the discussions of the lawsuits at the board meetings were intended to be confidential or, in the alternative, that the communications were in the furtherance of the rendition of legal services.[3] Petitioners' arguments are not persuasive. The presence of homeowners at these meetings, who were not represented clients, demonstrates that these meetings were not intended to be confidential. Moreover, on certain occasions individuals who were neither homeowners nor attorneys attended these meetings. The presence of these guests undermines the contention that the meetings constituted a forum where privileged, confidential communications were intended.
Moreover, the presence of these guests was not in the furtherance of the rendition of professional legal services because their presence was merely incidental to the legal relationship that may have existed at the time. As the Discovery Commissioner writes, "[t]he communication[s] would have occurred whether or not these individuals were present, and the board  not the *1186 `guests'  still would have been the body charged with determining what, if any, action should be taken." Therefore, no attorney-client privilege exists regarding the Association proceedings and minutes appertaining to such meetings. Moreover, no privilege exists with respect to any comments made by an attorney at meetings of the nature described above.

Implied Waiver
Real Parties argue that petitioners, by referring to the statute of limitations and its inapplicability to them, in each of their three amended complaints, have impliedly waived the attorney-client privilege relating to the relevant minutes, legal files and the deposition of Lattin. This court has yet to address the issue of implied waiver of the attorney-client privilege under the "at-issue" doctrine. However, "[i]t has become a well-accepted component of waiver doctrine that a party waives his privilege if he affirmatively pleads a claim or defense that places at-issue the subject matter of privileged material over which he has control." Developments in the Law-Privileged Communications, 98 Harv. L. Rev. 1450, 1637 (1985).
The doctrine of waiver by implication reflects the position that the attorney-client "privilege `was intended as a shield, not a sword.'" GAB Business Services, Inc. v. Syndicate 627, 809 F.2d 755, 762 (11th Cir.1987) (quoting Pitney-Bowes, Inc. v. Mestre, 86 F.R.D. 444, 446 (S.D. Fla. 1980)). In other words, where a party seeks an advantage in litigation by revealing part of a privileged communication, the party shall be deemed to have waived the entire attorney-client privilege as it relates to the subject matter of that which was partially disclosed. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982).
The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against the disclosure of such information would be manifestly unfair to the opposing party.
Conkling v. Turner, 833 F.2d 431, 434 (5th Cir.1989) (quoting Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)) (emphasis added).[4]
Additionally, selective use of privileged information by one side may "garble" the truth. The privilege "suppress[es] the truth, but that does not mean that it is a privilege to garble it; ... it should not furnish one side with what may be false evidence and deprive the other of the means of detecting the imposition." United States v. St. Pierre, 132 F.2d 837, 840 (2nd Cir.1942), cert. dismissed as moot, 319 U.S. 41 (1943). In other words, "where a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture." Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 413 (D. Del. 1992) (emphasis added).
Therefore, at-issue waiver occurs when the holder of the privilege pleads a claim or defense in such a way that eventually he or she will be forced to draw upon the privileged communication at trial in order to prevail, and such a waiver does not violate the policies underlying the privilege. Developments in the Law-Privileged Communications, 98 Harv. L. Rev. 1450, 1637 (1985). Generally,
[p]lacing-at-issue waiver can be justified as an application of the "anticipatory waiver" principle: an allegation, like a pre-trial disclosure, merely anticipates a waiver that will occur at trial. When the party asserting the privilege bears the burden of proof on an issue and can meet that burden only by introducing evidence of a privileged nature, waiver is clearly warranted ... [b]ut when the burden of proof does not lie with the party asserting the privilege, waiver is warranted only once a party indicates an intention of relying upon privileged evidence during trial. This analysis provides a simple rule of thumb for determining whether an allegation creates unfairness that calls for waiver. *1187 Developments in the Law-Privileged Communications, 98 Harv. L. Rev. 1450, 1639 (1985) (emphasis added).
Some courts have adopted a more liberal view of waiver than the "anticipatory waiver rule" suggested above. See Hearn v. Rhay, 68 F.R.D. 574, 576, 581 (E.D. Wash. 1975). Hearn proposed a three-tier test which requires that the repository of the privilege (1) make an assertion through some affirmative act that (2) renders relevant to the action (3) privileged matter vital to the opposing party's defense. Id. at 581. The Hearn test has come under severe criticism because of the balancing approach it espouses. See Developments in the Law-Privileged Communications, 98 Harv. L. Rev. 1450, 1640 (1985). Specifically, the criticism contends that Hearn's liberal waiver rules increase uncertainty in the law, increase litigation costs and judicial time spent on discovery disputes, and undermine the policies of the privilege. See Developments, supra at 1641; see also Koppers Co., Inc. v. Aetna Ca. and Sur. Co., 847 F. Supp. 360, 363 (W.D. Pa. 1994); Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 413 (D. Del. 1992); Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138, 1145-46 (La. 1987). See also Marcus, The Perils of Privilege: Waiver and the Litigator, 84 Mich. L. Rev. 1605, 1613-14 (1986).
An additional, primary criticism of cases following Hearn relates to interpretations and applications of fundamental fairness. Fairness should not simply dictate that because pleadings raise issues implicating a privileged communication, the privilege regarding those issues is waived. Rather, fairness should dictate that where litigants raise issues that will compel the litigants to necessarily rely upon privileged information at trial to defend those issues, the privilege as it relates only to those issues should be waived. Allocations of burdens of pleading and proof should not be the basis for depriving privilege-holders of their privilege. Marcus, The Perils of Privilege: Waiver and the Litigator, supra at 1605, 1630 (1986).
For reasons discussed above, we elect not to embrace the doctrine espoused in Hearn. We do, however, adopt the anticipatory waiver theory because it reinforces the purpose of the privilege and ensures fairness in litigation.
Because petitioners first raised the issue regarding their knowledge of construction defects (thus making the statute of limitations an issue), fairness dictates that the privilege not apply to communications relevant to that issue. Especially analogous to the present case is Byers v. Burleson, 100 F.R.D. 436 (D.D.C. 1983). In Byers, the plaintiff sued her former attorney, Burleson, for malpractice. Burleson moved for summary judgment, asserting that the statute of limitations barred plaintiff's claim. The trial court granted the motion but the Colorado appeals court reversed and remanded with instructions to determine when plaintiff or plaintiff's counsel knew or should have known about plaintiff's claim. Defendant Burleson moved for an order to depose plaintiff's attorney and for the production of records. Plaintiff raised the attorney-client privilege. The trial court rejected the claim of privilege, stating that "the plaintiff has waived the privilege because the information which the defendant seeks is necessary to resolve the precise statute of limitations issue which the plaintiff has interjected into the case." Id. at 440. Continuing, the Byers court also observed that "[i]f the plaintiff is permitted to argue that her cause was timely filed under the appropriate statute of limitations, the defendant should be able to respond with facts which answer that precise issue." Id.
Therefore, because petitioners raised the statute of limitations issue in their complaints and because evidence needed to prove the issue at trial necessarily comes from privileged documents, fairness requires that the privilege be waived. Thus, to the extent that they relate to the issue involving the statute of limitations, the Association minutes, legal files and the deposition of Lattin are not protected under the attorney-client privilege.

Attorney Work-Product Claim
Petitioners assert that the attorney work-product doctrine is applicable, because Real Parties have failed to show that the information they need is not otherwise available. We agree in part.
*1188 The attorney work-product doctrine does not apply to all the documents at issue. NRCP 26(b)(3) provides:
[A] party may obtain discovery of documents ... discoverable under subdivision (b) (1) of this rule [can request relevant and unprivileged documents] and prepared in anticipation of trial ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that he is unable without undue hardship to obtain the substantial equivalent by other means.
Additionally, the doctrine also protects an attorney's mental impressions, conclusions, or legal theories concerning the litigation, as reflected in memoranda, correspondence, interviews, briefs, or in other tangible and intangible ways. See Hickman v. Taylor, 329 U.S. 495, 510-11 (1947); NRCP 26 (b)(3).
Therefore, the Association minutes of the unprivileged nature discussed above that are at issue in the present case are not protected by the doctrine, because they were not prepared in anticipation of trial and do not constitute the mental impressions of the attorneys in question. The mere presence of the attorneys at these meetings does not make the minutes privileged and therefore protected by the work-product doctrine.
However, the legal files and the deposition of Lattin do fall under the doctrine to the extent that either source of discovery reflects the mental impressions, conclusions, opinions, or legal theories of the attorneys. It is thus clear that no blanket right to the legal files and unbridled depositional testimony of attorney Lattin exists. Obviously, if the legal files contain nonwork product documents relevant to the issue of the statute of limitations, those documents must be made available to the Real Parties. In the event the parties are unable to agree on the voluntary delivery of such documents, if any, or the nature of such documents, the district court should issue an order for the court's in camera inspection of the legal files.
Attorney Lattin's deposition may also be taken with the understanding that his mental impressions, conclusions, legal theories and opinions are not discoverable. However, facts known to Lattin regarding matters relevant to the issue of the statute of limitations, even if communicated to him by his clients, are discoverable under the anticipatory waiver doctrine. It is clear that petitioners will not be able to prevail at trial without demonstrating a factual basis for avoiding the bar of the statute of limitations. Petitioners have interjected the statute of limitations in their action, and fairness dictates that Real Parties have access to relevant facts pertaining to that issue.
Our ruling concerning limited discovery relating to the legal files and attorney Lattin's deposition is subject to a condition not reflected in the record before us. In order to overcome the work-product obstacle with respect to documents and tangible things prepared in anticipation of litigation or trial, Real Parties would have to demonstrate a substantial need and undue hardship, burdens they have not satisfied.
Real Parties have asserted that information in this latter category is relevant, important and needed. However, since substantial need for the information is an element necessary to circumvent the doctrine, Real Parties must demonstrate that such a need exists. A mere assertion of the need will not suffice. Additionally, the relevancy of the information is also an important consideration. However, parties seeking to circumvent the doctrine must also show that they cannot obtain the documents or tangible evidence, or the substantial equivalent thereof, without undue hardship. NRCP 26(b)(3). The burden of showing undue hardship rests with the party seeking to discover the information. See, e.g., NRCP 26(b)(3); see also Admiral Ins. v. United States Dist. Court For Dist. of Ariz., 881 F.2d 1486, 1494 (9th Cir.1989).
Real Parties have not demonstrated that the work-product evidence they seek in the legal files, or from Lattin's deposition cannot be obtained from other sources. Moreover, approximately seventy-four original homeowners still own condominiums at Wildcreek Gardens, and these seventy-four may very well possess the evidence Real Parties seek. Real Parties have not attempted to depose *1189 these individuals. See Arney v. Geo. A. Hormel & Co., 53 F.R.D. 179, 181 (D. Minn. 1971) (FRCP 26(b)(3) showing not satisfied where party seeking discovery had not attempted to take depositions of relevant persons). Real Parties are also free to attempt to locate former homeowners in an effort to determine their knowledge. Real Parties have not undertaken any of these discovery measures. Therefore, we conclude that Real Parties have not shown undue hardship regarding the legal files and Lattin's deposition insofar as they seek discovery regarding documents and tangible things prepared in anticipation of litigation or trial. Thus, these areas of discovery are protected by the attorney work-product doctrine.

CONCLUSION
We conclude that the attorney-client privilege, if it ever existed, was, to the extent noted above, waived because petitioners raised the issue of their knowledge of construction defects in avoidance of the bar of the statute of limitations. However, because Real Parties have not shown undue hardship and substantial need, the attorney work-product doctrine protects the legal files, written communications from counsel (the letter) and the deposition of Lattin with respect to documents and tangible things prepared in anticipation of litigation or trial. The mental impressions, conclusions, opinions, and legal theories of counsel concerning the litigation are not discoverable under any circumstances.
A writ of prohibition shall issue prohibiting the district court from proceeding with its discovery order requiring petitioners to provide improper discovery in the form of true attorney work product as defined in this opinion, and as applied to the legal files, written communications from counsel to the homeowner clients, and the deposition of attorney Lattin. In every other respect, the discovery ruling by the district court is to be obeyed.
STEFFEN, C.J., and YOUNG, SPRINGER, SHEARING and ROSE, JJ., concur.
NOTES
[1] At oral argument, Real Parties conceded the issue of the postcards; therefore, this court will not address them.
[2] The "General rule of privilege," NRS 49.095, provides:

A client has a privilege to refuse to disclose, and prevent any other person from disclosing, confidential communications:
1. Between himself or his representative and his lawyer or his lawyer's representative.
2. Between his lawyer and the lawyer's representative.
3. Made for the purpose of facilitating the rendition of professional legal services to the client, by him or his lawyer to a lawyer representing another in a matter of common interest.
NRS 49.055 provides that "[a] communication is `confidential' if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."
[3] Recall that the attorney-client privilege requires that:

A client has the privilege to disclose, and to prevent any other person from disclosing, confidential communications. NRS 49.095. A communication is confidential if it is not intended to be disclosed to third persons other than those to whom disclosure is in the furtherance of the rendition of professional legal services to the client... .
NRS 49.055.
[4] See also In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir.1982) (selective disclosure for tactical purposes waives privilege).