130 Nev., Advance Opinion 69

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LAS VEGAS SANDS CORP., A NEVADA CORPORATION; AND SANDS CHINA LTD., A CAYMAN ISLANDS CORPORATION, Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE ELIZABETH GOFF GONZALEZ, DISTRICT JUDGE, Respondents, and STEVEN C. JACOBS, Real Party in Interest. | No. 63444 |

**FILED**

AUG 07 2014



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition or mandamus challenging a district court order authorizing the use of purportedly privileged documents.

*Petition granted in part.*

Morris Law Group and Steve L. Morris and Rosa Solis-Rainey, Las Vegas; Kemp, Jones & Coulthard, LLP, and J. Randall Jones and Mark M. Jones, Las Vegas; Holland & Hart LLP and J. Stephen Peek and Robert J. Cassity, Las Vegas,
for Petitioners.

Pisanelli Bice, PLLC, and Todd L. Bice, James J. Pisanelli, Debra L. Spinelli, and Eric T. Aldrian, Las Vegas,
for Real Party in Interest.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, GIBBONS, C.J.:

In this opinion, we consider whether a former chief executive officer of a corporation, who is now suing his former employer, is within a "class of persons" entitled to access the corporation's privileged documents for use in the litigation. We conclude that a corporation's current management is the sole holder of its attorney-client privilege, and thus, Nevada law does not allow for a judicially created class of persons exception to attorney-client privilege. Accordingly, we grant petitioners' request for a writ of prohibition in part to prevent real party in interest from using the purportedly privileged documents in the underlying litigation.

*FACTS AND PROCEDURAL HISTORY*

This matter arises out of real party in interest Steven C. Jacobs's termination as president and chief executive officer of Sands China Ltd. On or near the same day he was terminated, Jacobs gathered approximately 40 gigabytes of documents in the form of e-mails and other communications (the documents), which Jacobs continues to possess.

Approximately three months after his termination, Jacobs filed a complaint against petitioners Las Vegas Sands Corp. (LVSC) and Sands China Ltd., as well as nonparty to this writ petition, Sheldon Adelson, the chief executive officer of LVSC (collectively, Sands). In the complaint, Jacobs alleged that Sands breached his employment contract by refusing to award him promised stock options, among other things.

---

[1]The Honorable Kristina Pickering and the Honorable Ron Parraguirre, Justices, voluntarily recused themselves from participation in the decision of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

Almost nine months after filing his complaint, Jacobs disclosed, as an update on the status of document production, that he possessed the documents at issue in this writ petition. Shortly thereafter, the parties met and conferred regarding the documents, and Sands asserted that the material may be subject to Sands's attorney-client privilege and demanded that Jacobs return the documents. Jacobs, however, refused to return the documents.

*LVSC files a motion for a protective order and for return of the documents*

Approximately one month after Jacobs disclosed that he possessed the documents, LVSC filed a motion for a protective order and for return of the documents.[2] Among LVSC's several arguments was that, after he was terminated, Jacobs had no right to possess documents that were subject to LVSC's attorney-client privilege.

The district court expressed concern that it could not consider LVSC's motion in light of the stay that this court had imposed on the underlying litigation in connection with a previous writ petition that Sands China filed in this court.[3] LVSC communicated to the district court that if the district court believed that entertaining the motion would

---

[2]Sands China did not join in the motion in order to avoid seeking affirmative relief from the district court and thereby subject itself to the court's jurisdiction.

[3]On August 26, 2011, this court granted Sands China's petition for a writ of mandamus, which challenged the district court's order denying Sands China's motion to dismiss it from the underlying action for lack of personal jurisdiction. *See Sands China Ltd. v. Eighth Judicial Dist. Court*, Docket No. 58294 (Order Granting Petition for Writ of Mandamus, August 26, 2011). As a result, this court directed the district court to stay the underlying action until the district court held an evidentiary hearing on whether Sands China is subject to personal jurisdiction in Nevada. The underlying action is still stayed because the parties have not yet concluded jurisdictional discovery in preparation for the ordered evidentiary hearing.

violate the stay, then LVSC would withdraw the motion and instead file a second action challenging Jacobs's possession and use of the documents.

*LVSC files a second action in district court in an attempt to obtain a ruling on Jacobs's possession of the purportedly privileged documents*

Subsequently, LVSC filed a complaint (the second action) against Jacobs in the district court claiming theft/conversion of the documents and seeking preliminary and permanent injunctive relief. LVSC simultaneously filed a motion in the second action for a temporary restraining order and preliminary injunction or, in the alternative, for a protective order, again arguing that Jacobs took company documents containing attorney-client privileged communications without the authority to do so. The district court granted injunctive relief, prohibiting Jacobs from disseminating the documents to third parties for 14 days, in order to allow Sands to return to the original action and file an emergency writ petition with this court requesting a "carve out" from the underlying stay.[4] Neither party challenged this decision before this court.

Six days after the hearing in the second action, LVSC filed an emergency writ petition with this court requesting a limited lift of the stay in order to pursue a protective order barring the use of the privileged documents and requiring their return. This court denied LVSC's emergency writ petition.

At a subsequent hearing in the second action, the district court made the determination that the subject matter was purely a jurisdictional discovery dispute that could be resolved in this case. Therefore, the district court dismissed the second action without

---

[4]The district court labeled its order an "Interim Order," prohibiting Jacobs from disseminating the documents to any third party for 14 days.

 

prejudice,[5] indicating that Sands must pursue its discovery claims in this case. Thereafter, LVSC stopped pursuing its complaint in the second action, and that action has been statistically closed.

The district court subsequently ordered the parties to establish an electronically stored information (ESI) protocol in the instant action that (1) directed Jacobs to turn over copies of the documents to an independent ESI vendor,[6] (2) allowed Jacobs and Sands to review the documents and assert any privilege, and (3) provided that the district court would then conduct an in-camera review to resolve any privilege disputes.

*After providing the documents to a court-ordered ESI vendor pursuant to an ESI protocol, Jacobs files a motion to return the documents*

After extensive motion practice, the district court entered a formal ESI protocol in which it appointed an independent ESI vendor, and ordered Jacobs to provide the ESI vendor a full mirror image of the documents. Pursuant to the ESI protocol, Sands received the documents from the independent ESI vendor, reviewed the documents for privileges, and completed a privilege log. Shortly after receiving Sands's privilege log, Jacobs filed a motion for the return of the documents from the independent ESI vendor. Jacobs argued that Sands's privilege log was deficient and asserted several improper privileges. Additionally, Jacobs argued that the "collective corporate client" approach to the attorney-client

---

[5]The district court did not enter a written order dismissing the second action.

[6]An ESI vendor is a neutral third party who stores potentially discoverable electronic information such that the parties can search, collect, and produce relevant documents and withhold privileged documents. *See* Jason Fliegel & Robert Entwisle, *Electronic Discovery in Large Organizations,* 15 Rich. J.L. & Tech. 7, 2009, at 25-27.

privilege applied, such that Sands could not "deprive Jacobs of access to the proof, particularly when he was a participant in its creation." Essentially, Jacobs argued that he was "the client" when he was directly involved in running Sands China, and therefore had a right to access and use any privileged documents that had been created while he was CEO of Sands China.

In opposition, Sands argued that pursuant to NRS 49.045 and 49.095, Sands was the sole holder of the attorney-client privilege, and it had not waived that privilege.

*The district court grants Jacobs's motion, ruling that Jacobs is among the "class of persons" legally entitled to view and use privileged documents that pertain to his tenure at Sands China*

The district court granted Jacobs's motion to return the documents from the independent ESI vendor based on the legal conclusion that Jacobs was within a class of persons legally allowed to view and use the purportedly privileged documents. The district court order stated that it did not need to address "whether any of the particular documents identified by [Sands] are subject to some privilege . . . , whether Jacobs has the power to assert or waive any particular privileges that may belong to [Sands] . . . or whether [Sands] waived the privilege." Rather, the district court ruled:

> the question presently before this [c]ourt is whether Jacobs, as a former executive who is currently in possession, custody and control of the documents and was before his termination, is among the class of persons legally allowed to view those documents and use them in the prosecution of his claims and to rebut [Sands's] affirmative defenses and counterclaim, as these were documents that the former executive authored, received and/or possessed, both during and after his tenure.

Based on this "class of persons" exception, the district court granted Jacobs's motion to return the remaining documents from the independent ESI vendor. Two days later, Sands filed this original petition for writ of prohibition or mandamus, asking that this court direct the district court to vacate its order permitting Jacobs to use the documents in the underlying litigation.[7]

## DISCUSSION

As a preliminary matter, Jacobs argues that writ relief is unavailable because Sands failed to appeal the district court's ruling in the second action. Jacobs argues that a district court's refusal to grant an injunction is immediately appealable and that "writ relief is not available to correct an untimely notice of appeal." *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 224-25, 88 P.3d 840, 841 (2004); *see also Bradford v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 308 P.3d 122, 123 (2013).

While this is generally a correct statement, in this case, the district court's interim order actually *granted* relief by prohibiting Jacobs from disseminating the documents to third parties for 14 days. This afforded Sands the time to use the ESI protocol in the underlying action to review the documents and assert any applicable privileges. In addition, the district court's ruling in the second action did not reach the merits of the "class of persons" exception to the corporate attorney-client privilege issue raised in this writ petition; it instead ruled that Sands needed to pursue its privileges in this case. Thus, any appeal of the district court's ruling in the second action would not preclude this current writ petition. As a result, we are not persuaded by Jacobs's argument that Sands should be estopped from filing this writ petition.

---

[7]This court previously granted Sands's emergency motion to stay the district court order under NRAP 8(c) pending resolution of this petition.

Additionally, even if we were to construe the district court's order as adverse to Sands, the district court had not consolidated the motion for a temporary restraining order and preliminary injunction with the trial on the merits pursuant to NRCP 65(a)(2), and when it dismissed the second action, it did so without prejudice.[8] Under these circumstances, LVSC could still obtain the permanent injunction requested in its complaint in the second action. NRCP 65; *cf. Cal. State Univ., Hayward v. NCAA*, 121 Cal. Rptr. 85, 92 (Ct. App. 1975); *Art Movers, Inc. v. Ni W., Inc.*, 4 Cal. Rptr. 2d 689, 696 (Ct. App. 1992). In our view, Sands made a strategic decision to assert its privileges in this case—a decision that coincided with the directions of the district court.[9] Therefore, we conclude that Sands's writ petition is proper in this instance.

*We exercise our discretion to consider Sands's petition for a writ of prohibition*

"A writ of prohibition may issue to arrest the proceedings of a district court exercising its judicial functions when such proceedings are in

---

[8]The district court stated that it was dismissing the complaint "for [Sands] to pursue it as a discovery dispute related to the jurisdictional evidentiary hearing issue" in the instant case.

[9]Although Jacobs argues that Sands's failure to timely object to his possession of the documents should constitute a waiver of any privilege that Sands may be able to assert, the district court did not rule on this issue and made no findings of fact to this effect. The record before this court is unclear regarding the steps taken by Sands to preserve any privileges. We therefore decline to consider Jacobs's waiver-related arguments in opposition to this writ petition. *See Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. ___, ___, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance."). To the extent necessary to address Jacobs's waiver-related arguments, we direct the district court to make findings of fact and resolve whether Sands waived any privileges.

excess of the jurisdiction of the district court." *Club Vista Fin. Servs., L.L.C. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___ & n.6, 276 P.3d 246, 249 & n.6 (2012) (explaining that discovery excesses are more appropriately remedied by a writ of prohibition than mandamus). Although this court will generally decline to review issues involving discovery disputes, this court has elected to intervene in discovery matters when (1) the trial court issues a blanket discovery order without regard to relevance, or (2) a discovery order requires disclosure of privileged information. *Valley Health Sys., L.L.C. v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 252 P.3d 676, 679 (2011).

Although Jacobs already possesses the purportedly privileged documents, this case nevertheless presents a situation where, if Jacobs were improperly permitted to use the documents in litigation, "the assertedly privileged information would irretrievably lose its confidential and privileged quality and petitioners would have no effective remedy, even by a later appeal." *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 350-51, 891 P.2d 1180, 1183-84 (1995). Thus, we choose to exercise our discretion to consider this writ petition because the district court order at issue permits adverse use of purportedly privileged information. *See Valley Health*, 127 Nev. at ___, 252 P.3d at 679; *see also Aspen Fin. Servs., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 289 P.3d 201, 204 (2012) ("[W]rit relief may be available when it is necessary to prevent discovery that would cause privileged information to irretrievably lose its confidential nature and thereby render a later appeal ineffective."). Accordingly, we now turn to the merits of Sands's petition.

*Standard of review*

Generally, discovery issues "are within the district court's sound discretion, and [this court] will not disturb a district court's ruling regarding discovery unless the court has clearly abused its discretion."

*Club Vista*, 128 Nev. at ___, 276 P.3d at 249. But here, the parties dispute the proper scope of the attorney-client privilege, which, in Nevada, is governed primarily by statute. *See* NRS 49.035-.115. Statutory interpretation is a question of law subject to our de novo review, even when arising in a writ proceeding. *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008); *see also United States v. Richey*, 632 F.3d 559, 563 (9th Cir. 2011) ("We review de novo the district court's rulings on the scope of the attorney-client privilege."). Therefore, our analysis surrounding the proper scope of the attorney-client privilege is subject to de novo review.

*The district court erred when it ruled that Jacobs may use Sands's assertedly privileged documents in litigation on the grounds that Jacobs was within a class of persons entitled to review Sands's privileged information*

*Nevada privilege law grants the attorney-client privilege to the client corporation's current management*

"Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language." *Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007). But when a statute is susceptible to more than one reasonable interpretation, it is ambiguous, and this court must resolve that ambiguity by looking to legislative history and "construing the statute in a manner that conforms to reason and public policy." *Great Basin Water Network v. Taylor*, 126 Nev. 187, 196, 234 P.3d 912, 918 (2010).

Here, Sands argues that the plain language of NRS 49.095 unambiguously guarantees a client the right "to prevent any other person from disclosing" privileged communications. Thus, Sands argues that given the broad language used in the statute, Nevada law does not allow for a "class of persons," other than the client itself, to use or disclose privileged documents over a client's assertion of privilege. While we agree

that NRS 49.095 unambiguously guarantees a client the right "to prevent any other person from disclosing" privileged communications, we note that this right belongs to the client—a term defined by NRS 49.045.

NRS 49.045 defines "client" as "a person, including a public officer, *corporation*, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer." (Emphasis added.) In a corporate context, a client corporation is not a living entity that can make decisions independently—people have to make decisions on its behalf. Thus, the issue we are faced with is the appropriate scope of persons who have the authority to assert a corporation's privilege and whether an exception should exist when a corporation's current management attempts to assert the attorney-client privilege against a former officer or director. Other courts have addressed this issue, with varying results.

*We decline to adopt an exception to the attorney-client privilege based on a litigant's status as a former officer or director of a corporation*

Sands argues that the district court erred because the attorney-client privilege belongs exclusively to the client corporation's current management, and thus Jacobs's status as former CEO alone does not entitle him to access and use Sands's privileged communications in litigation. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985); *Montgomery v. eTreppid Techs., L.L.C.*, 548 F. Supp. 2d 1175, 1187 (D. Nev. 2008). Sands contends that the district court's order is inconsistent with the purpose of attorney-client privilege because allowing former employees to use the company's privileged documents against it in litigation would chill officers' and directors' willingness to communicate candidly with counsel. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Dexia Credit Local v. Rogan*, 231

F.R.D. 268, 277 (N.D. Ill. 2004) ("To rule otherwise would defeat that expectation, and could chill the willingness of control group members to speak candidly on paper (or, these days, in electronic media) about privileged matters, knowing that some day one of their number may leave the control group and become adverse (whether through litigation or business activity) to the corporation.").

*The "collective corporate client" or "joint client" exception to corporate attorney-client privilege*

The collective corporate client exception to corporate attorney-client privilege is based on the idea that there is one collective corporate client that includes the corporation itself as well as each individual member of the board of directors, rather than just the corporation alone. *See Lane v. Sharp Packaging Sys., Inc.*, 640 N.W.2d 788, 815-16 (Wis. 2002) (Abrahamson, C.J., dissenting); *Montgomery*, 548 F. Supp. 2d at 1183, 1185. The theory is that "directors are collectively responsible for the management of a corporation and a corporation is an inanimate entity that cannot act without humans"; therefore "it is consistent with a director's role and duties that the director be treated as a 'joint client.'" *Montgomery*, 548 F. Supp. 2d at 1183. Thus, similar to the way in which parties with a common interest who retain a single attorney may not assert the attorney-client privilege against each other if they later become adverse, *Livingston v. Wagner*, 23 Nev. 53, 58, 42 P. 290, 292 (1895), the collective corporate client approach creates an exception to a corporation's attorney-client privilege by precluding a corporation from asserting its attorney-client privilege against a former director or officer. *See Gottlieb v. Wiles*, 143 F.R.D. 241, 247 (D. Colo. 1992).

Jacobs argues that the district court's decision is amply supported by caselaw adopting the collective corporate client exception to corporate attorney-client privilege. Jacobs primarily relies on *People v.*

*Greenberg*, 851 N.Y.S. 2d 196, 200-02 (App. Div. 2008). In *Greenberg*, the New York Attorney General's office filed a complaint against AIG and its former CEO and CFO for their involvement in alleged sham insurance transactions. The former CEO and CFO served document requests on AIG seeking documents created during their tenure as officers and directors of AIG for use in their defense. *Id.* at 197-98. In evaluating the issue, the court separated attorney-client communications into "two categories: general business matters and the four transactions at the heart of this action." *Id.* at 200. The court found that while the corporation's current board of directors controlled the attorney-client privilege regarding "general business matters," a former director may inspect records that are "necessary to protect their personal responsibility interests." *Id.* at 201. Thus, the court found that former executives were "within the circle of persons entitled to view privileged materials without causing a waiver of the attorney-client privilege" because they were "privy to, and on many occasions actively participated in, legal consultations regarding the four subject transactions . . . ."[10] *Id.* at 201-02; *see also Kirby v. Kirby*, 1987 WL

---

[10]While the district court did not directly cite to *Greenberg* in its order, it appears that its order is primarily based on the analysis in *Greenberg*. In *Greenberg*, the court held that former corporate officers had a "qualified right" to access privileged corporate documents because those documents were needed by the officers to defend themselves against allegations of malfeasance. *Id.* at 201-02 (emphasis omitted). Here, the only issue upon which discovery is being conducted is whether Sands China is subject to personal jurisdiction. In light of this fact, it is unclear how the *Greenberg* court's analysis led to the district court's conclusion that Jacobs is entitled to use any documents that he "authored, received and/or possessed, both during and after his tenure," in establishing personal jurisdiction over Sands China. To the extent that Sands may have placed any documents "at-issue," this court's analysis of at-issue waiver in *Wardleigh v. Second Judicial District Court*, 111 Nev. 345, 891 P.2d 1180 (1995), provides the appropriate framework for resolving those issues. But at this point, it would be inappropriate for this court to

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

14862, at *7 (Del. Ch. July 29, 1987) (holding that the directors of a closely held corporation, collectively, were the client and that joint clients may not assert the attorney-client privilege against one another);[11] *Gottlieb*, 143 F.R.D. at 247 (concluding that because the plaintiff was a chairman of the board and CEO when the documents were created, he was "squarely within the class of persons who could receive communications" from the corporation's counsel "without adversely impacting the privileged or confidential nature of such material").

### *"The entity is the client" approach*

Sands primarily cites two cases for its proposition that the corporation's current management is the sole holder of the attorney-client privilege: *Weintraub*, 471 U.S. 343, and *Montgomery*, 548 F. Supp. 2d 1175. In *Weintraub*, the Supreme Court considered whether managers of a bankrupt corporation could assert the attorney-client privilege on behalf of the corporation or if, instead, the right to assert and waive the privilege passed to the bankruptcy trustee. 471 U.S. at 349. The Court framed the issue before it as "which corporate actors are empowered to waive the corporation's privilege."[12] *Id.* at 348. The Court explained that for solvent

---

*...continued*

address such a fact-intensive issue that would hinge on the content of individual documents, and whether Sands placed such a document at issue. *See Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. ___, ___, 279 P.3d 166, 172 (2012).

[11]While this is an unpublished disposition, many courts across the country have cited to this case. *See, e.g., Milroy v. Hanson*, 875 F. Supp. 646, 648 (D. Neb. 1995).

[12]*Weintraub* specifically addressed which party has the power to control attorney-client privilege during the pendency of a bankruptcy. 471 U.S. at 349. However, its analysis of corporate attorney-client privilege has been cited outside the context of bankruptcy. *See Montgomery*, 548 F. Supp. 2d at 1183; *Milroy*, 875 F. Supp. at 649-50 (citing *Weintraub* for the

*continued on next page...*

Supreme Court
of
Nevada

(O) 1947A

corporations, the power to waive attorney-client privilege rests with the corporation's officers and directors.[13] *Id.* "The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." *Id.* at 348-49. The Court reasoned that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* at 349. Thus, the Court concluded that "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the [displaced managers] might have made to counsel concerning matters within the scope of their corporate duties." *Id.* As a result, a former officer and director "who is now neither an officer nor a director . . . retains no control over the corporation's privilege." *Id.* at 349 n.5.

Similarly, in *Montgomery*, the federal district court for the district of Nevada found that a former officer may not access his former employer's privileged communications for use in his lawsuit against his former employer. 548 F. Supp. 2d at 1187. Dennis Montgomery, the plaintiff, who was a member[14] and former manager for eTreppid,

---

...*continued*

proposition that "[a] dissident director is by definition not 'management' and, accordingly, has no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of [current] 'management'").

[13]More accurately, the Court noted that the parties agreed that the power to waive attorney-client privilege rests with the corporation's officers and directors. *See Weintraub*, 471 U.S. at 348-49. But it appears that the Court implicitly supported these conclusions because it cited to additional legal authority to support them. *Id.*

[14]The respondent in that case, eTreppid, is an LLC, not a corporation. 548 F. Supp. 2d at 1177. However, the court determined that eTreppid's structure was most similar to that of a corporate structure, and
*continued on next page...*

Supreme Court
OF
Nevada

(O) 1947A

requested discovery, in response to which eTreppid asserted the attorney-client privilege. *Id.* at 1177. Montgomery claimed that as a member and former manager, he was a "joint client," and as such, eTreppid could not assert the attorney-client privilege against him with respect to privileged communications created during his tenure as a manager. *Id.* The *Montgomery* court analyzed a number of cases on each side of the issue, and concluded that

> [T]he *Milroy*[15] [and *Weintraub*] line of cases are more persuasive. It makes sense that the corporation is the sole client. While the corporation can only communicate with its attorneys through human representatives, those representatives are communicating on behalf of the corporation, not on behalf of themselves as corporate managers or directors. Moreover, the court finds very convincing the language in

---

*...continued*

therefore treated it as a corporation for the purposes of its privilege analysis. *Id.* at 1183.

[15]In *Milroy*, the plaintiff Michael Milroy, an active member of the board of directors and minority stockholder of a corporation, sued several other directors and majority stockholders based on claims related to alleged violations of their fiduciary duty. 875 F. Supp. at 647. Milroy requested discovery, which the corporation—via a majority vote of the other directors—refused based on attorney-client privilege. *Id.* Milroy asked the federal court to adopt the collective corporate client exception to corporate attorney-client privilege because he was an active director and thus belonged to the entity that controls the corporation. *Id.* at 648. The court found that no exception should apply to the normal rule that "since the majority decision of the board of directors of a Nebraska corporation 'controls' the corporation . . . an individual director is bound by the majority decision and cannot unilaterally waive or otherwise frustrate the corporation's attorney-client privilege if such an action conflicts with the majority decision of the board of directors." *Id.* Thus, "[a] dissident director is by definition not 'management' and, accordingly, has no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of 'management.'" *Id.* at 649-50.

Supreme Court
of
Nevada

(O) 1947A

16

*Weintraub*, which states that the privilege belongs to the corporation, can be asserted or waived only by management, and that this power transfers when control of the corporation is transferred to new management.

Also important to the court's decision is the fact that Montgomery, like the former director in *Milroy*, is not suing on behalf of eTreppid or in his capacity as a former manager or officer. Rather, Montgomery is suing to benefit himself individually—a perfectly acceptable position, but not one which should entitle him to eTreppid's attorney-client privileged communications. Like the "dissident" director in *Milroy*, Montgomery is now adverse to eTreppid and may not obtain privileged documents over the objection of current management. Moreover, even though Montgomery would have had access to such documents during his time at eTreppid, he still would have been duty-bound to keep such information confidential.

*Id.* at 1187.

*We decline to adopt an exception to the attorney-client privilege based on a litigant's status as a former officer or director of a corporation*

It appears that the modern trend in caselaw follows the *Weintraub, Milroy*, and *Montgomery* line of cases. *See Montgomery*, 548 F. Supp. 2d at 1186 (noting that "many more courts have rejected the reasoning in *Gottlieb* than in *Milroy*"); *Nunan v. Midwest, Inc.*, No. 2004/00280, 2006 WL 344550, at *7 (N.Y. Sup. Ct. January 10, 2006) ("Although there is discredited authority to the contrary . . . most of the more recent cases embrace the view that, when a former officer or director is suing the company for his or her own personal gain, the privilege belongs to the corporation and if asserted is effective to prevent disclosure to the former officer or director." (internal citations omitted)).

More importantly, we are persuaded by the policy behind the *Weintraub*, *Milroy*, and *Montgomery* line of cases and conclude that it is consistent with Nevada privilege law. Allowing a former fiduciary of a corporation to access and use privileged information after he or she becomes adverse to the corporation solely based on his or her former fiduciary role is entirely inconsistent with the purpose of the attorney-client privilege.[16] We believe such a situation would have a perverse chilling effect on candid communications between corporate managers and counsel. *Cf. Whitehead v. Nev. Comm'n on Judicial Discipline*, 110 Nev. 380, 410, 873 P.2d 946, 965 (1994) (recognizing that the attorney-client privilege's purpose "is to protect confidential communications between attorney and client"). We therefore decline to recognize the collective corporate client exception to a corporation's attorney-client privilege and conclude that Jacobs may not use Sands's privileged documents in litigation over Sands's current management's assertion of the attorney-client privilege.

Thus, we conclude that the district court erred when it applied the collective corporate client approach to find that Jacobs was within a class of persons legally allowed to use Sands's purportedly privileged documents in the prosecution of his claims. We therefore grant Sands's petition for a writ of prohibition in part and direct the district court to vacate its June 19, 2013, order granting the return of the documents from

---

[16]Other courts have expressed similar concerns. *See, e.g.*, *Montgomery*, 548 F. Supp. 2d at 1187; *Davis v. PMA Cos., Inc.*, No. CIV-11-359-C, 2012 WL 3922967, at *6 (W.D. Okla. Sept. 7, 2012) ("It seems paradoxical to allow a party to access information previously available to that individual only because of his or her role as a fiduciary once that party is adverse to the corporation and no longer required to act in the corporation's best interests.").

the independent ESI vendor. We note that the district court has yet to make a determination as to whether Sands's assertions of privilege are proper. As it previously indicated that it would do, the district court should resolve any disputes regarding Sands's privilege log by conducting an in-camera review of the purportedly privileged documents to determine which documents are actually protected by a privilege.[17]

## *CONCLUSION*

We conclude that a corporation's current management controls the privilege "to refuse to disclose, and to prevent any other person from disclosing, confidential communications." This precludes a finding that there is a class of persons outside the corporation's current officers and directors who are entitled to access the client's confidential or privileged information over the client's objection for use in litigation. Therefore, we conclude that the district court erred when it employed the collective corporate client exception to corporate attorney-client privilege in ruling that Jacobs, solely based on his former executive position with Sands

---

[17]Because the district court resolved the underlying motion without addressing Jacobs's objections to various assertions of privilege, the district court should evaluate each of Jacobs's objections and determine the factual and legal validity of Sands's assertions of privilege. We note that documents that were not sent to legal counsel for the purpose of rendering legal advice, such as instances in which legal counsel was merely copied, are not protected by the attorney-client privilege. *See Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 390 (N.D. Okla. 2010); *ABB Kent-Taylor, Inc. v. Stallings & Co., Inc.*, 172 F.R.D. 53, 57 (W.D.N.Y. 1996). Similarly, as noted above, to the extent that Sands may have placed any documents "at-issue," this court's analysis of at-issue waiver in *Wardleigh v. Second Judicial District Court*, 111 Nev. 345, 891 P.2d 1180 (1995), provides the appropriate framework for resolving those issues.

China, was legally allowed to use the purportedly privileged documents over of Sands's claim of privilege.

We therefore grant Sands's writ petition in part and direct the clerk of this court to issue a writ of prohibition ordering the district court to halt the return to Jacobs of the purportedly privileged documents.[18]

_____, C.J.
Gibbons

We concur:

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[18]Sands's alterative request for a writ of mandamus is denied. In light of our resolution of this writ petition, we vacate the stay imposed by our October 1, 2013, order.

SUPREME COURT
OF
NEVADA

(O) 1947A